**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael PRICE, Defendant–Appellant.**

**No. 96–5484.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1997.

Decided Jan. 8, 1998.

tivities. *See infra.*

April R. Ferguson (argued and briefed), Office of the Federal Public Defender for the Western District of Tennessee, Memphis, TN, for Defendant–Appellant.

Joseph C. Murphy, Jr., U.S. Attorney (argued and briefed), Memphis, TN, for Plaintiff–Appellee.

Before: KRUPANSKY and SUHRHEINRICH, Circuit Judges; ROSEN, District Judge.*

## OPINION

ROSEN, District Judge.

Defendant/Appellant Michael Price appeals his conviction on one count of aiding and abetting in the attempted possession of more than five kilograms of cocaine with intent to distribute. For the following reasons, we affirm.

## I. *INTRODUCTION*

On May 15, 1995, a federal grand jury sitting in the Western District of Tennessee returned a one-count indictment charging defendant Michael Price ("Price") with aiding and abetting in the attempted possession of more than five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Price entered a plea

of not guilty at his arraignment. Trial began on November 15, 1995. Following the conclusion of the Government's case-in-chief, Defendant made a motion for judgment of acquittal, which the court denied. Price did not renew his motion at the close of his defense proofs. On November 20, 1995, the jury returned its verdict of guilty on the one-count indictment. On March 22, 1996, the District Court sentenced Price to 151 months imprisonment, to be followed by a five-year term of supervised release. A timely notice of appeal was filed on March 28, 1996.

Price presents two issues for review: (1) Whether the District Court committed reversible error by refusing to permit the admission of certain hearsay testimony he sought to admit pursuant to Fed.R.Evid. 804(b)(3); and (2) Whether the proof introduced in the trial was constitutionally sufficient to establish the guilt of the defendant beyond a reasonable doubt.

## II. *FACTUAL BACKGROUND*

In the spring of 1995, Memphis police received a tip from a confidential informant that a party was coming from Chicago to purchase fifteen kilograms of cocaine. As a consequence, Officer Leo Hampton ("Hampton") of the Organized Crime Unit of the Memphis Police Department, along with other officers, conducted a drug-related investigation at the Motel 6 on Brooks Road in Memphis, Tennessee. On April 28, 1995, Hampton set up surveillance at the Motel 6 parking lot using video equipment. That equipment recorded the arrival of four persons later identified as Price, Desmond Patnett ("Patnett"), Kevin Fosten ("Fosten"), and a female named Kim ("Kim") who had traveled together from Chicago to Memphis in two separate vehicles. The videotapes Hampton made of the surveillance were played at trial and showed Price carrying a blue tote bag, later found to contain more than $150,000, from a minivan into Room 238, the room registered to Price. Kim was staying in Room 229. Fosten later took the blue

*The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

tote bag to Kim's room and then rejoined Patnett and Price in Room 238.

Hampton had wired Room 124 where the confidential informant was registered so the officers could overhear any conversations taking place in the room. The conversations that took place in Room 124 were recorded on the sound track of the second videotape. There is no visual record of what transpired in the motel room due to unexplained difficulties with the equipment.

Minutes after Fosten had taken the tote bag to Room 229, Patnett left Room 238, walked to the informant's room, and went inside, where he told the informant that he had brought a friend with him and that he (Patnett) could move "fifty in a month." While relating the dangers associated with drug dealing in Chicago, Patnett told the informant about the possibility of being robbed, kidnapped, and stuffed in the trunk of a car. Patnett told the informant that the money he was carrying was "in tens." The informant told Patnett that his product was "cocaine." After talking on the phone with Officer Blum, who was posing as a seller of cocaine, the informant told Patnett that the seller wanted to see the money. The informant suggested that Patnett show him the money and that Patnett bring his friend, too.

After leaving the informant's room, Patnett returned to Room 238. He and Price then went to Kim's room. When the two men left Kim's room, Price was carrying the blue tote bag. Price and Patnett entered the informant's room. When the informant asked the two men if there was newspaper (rather than cash) in the tote bag, Price replied, "Go through it." The tape recorded the sound of a zipper being moved and the rustle of paper. Price then asked to use the bathroom. There was the sound of a toilet flushing on the tape. Then Patnett left the informant's room, carrying the blue tote bag and its contents back to Kim's room. This left Price alone with the informant in Room 124. On the videotape Price is heard telling the informant that "we've come a long way" and asking "where's he at." Price then told the informant that "we usually have people bring our coke to us." When the informant told Price that he didn't care how much

Patnett and Price got for selling the cocaine, Price told him that they wanted to keep things "nice and cool" and that he was a "patient man." Price then said that they were "heading back today" and that he was "ready now."

Officer Blum, acting undercover as a drug dealer, entered the informant's motel room, and just a few seconds later Patnett returned, but without the blue tote bag. Blum opened the large suitcase he was carrying to reveal assorted clothing and fifteen kilograms of cocaine. At trial, Blum testified that both Price and Patnett walked over to look at the cocaine inside the suitcase. Patnett then asked, "Fifteen?" Blum acknowledged that there were fifteen packets and then asked if they wanted him to test the packets. Both men nodded affirmatively. One said, "Uh-huh." Blum began to cut into one of the kilograms of cocaine with a knife when either Price or Patnett told him to cut the corner. Blum testified that neither man was able to test the drugs because the arrest team came into the room at that time and arrested Patnett and Price. Kim and Fosten were also arrested and the motel rooms were searched. In Room 229 the police found the blue tote bag, which was locked. At the police station, the tote bag was opened to reveal a cache of $151,424.01.

At trial, the Government called Detectives Blum and Hampton to testify. The Government also offered into evidence the two videotapes, the suitcase and cocaine, the motel receipt for Room 238 showing that Price had signed for that room, and the blue tote bag. Hampton explained the surveillance operation and introduced the video recordings. Blum testified that at the time of the transaction the wholesale value of cocaine was $10,000 to $15,000 a kilogram, making the amount of money found in the blue tote bag sufficient to cover the cost of the cocaine involved in this transaction. Based on his experience as a police officer, Blum explained that Price's job was to perform surveillance, assist Patnett generally with the drug deal and protect the investment. When asked to explain how a deal could be completed with no money present in the room, Blum testified that he thought the money was in the room,

based on the informant's information. Even though the cash was not actually in the room, Blum believed that there was an attempt to buy drugs, and only the premature arrest signal prevented the completion of the transaction.

Following the conclusion of the Government's case-in-chief, Defendant made a motion for judgment of acquittal, which the District Court denied.

Before commencing his proofs, Defendant moved the court to allow the admission of a statement made by Patnett subsequent to his arrest. In the statement, Patnett related that he was in Memphis to purchase fifteen kilograms of cocaine; that Price rode in the van with him and that he was there to help drive; that although he did not tell Price and the others why he was traveling to Memphis, he "assumed they knew"; that he asked them to help him drive by "making them some sweet offers"; that the money in the blue tote bag belonged to him. Defense counsel argued that Patnett's statement was a statement against penal interest, and as such, was admissible pursuant to Fed.R.Evid. 804(b)(3).

The District Court determined that Patnett's statement was not admissible under any theory, and specifically not under Fed. R.Evid. 804(b)(3), because of the lack of corroborating circumstances clearly indicating the trustworthiness of the statement.

Price, who had no previous felony convictions, was the sole defense witness at trial. Price testified that he had only met Patnett about three months prior to the trip to Memphis. He said that he, Patnett and Fosten traveled together from Chicago in a Dodge minivan, and that Kim later joined them, but she drove her Volkswagen. He said that the only prearrangement with Patnett for the trip to Memphis was that Price would assist in the driving, which he did, although Patnett drove the minivan for the greater part of the trip. Price testified that he received nothing from Patnett for coming to Memphis with him, nor was he promised anything. He came to Memphis because it was an opportunity to take some time off from his hectic work schedule in Chicago. Price said that Memphis was just a stopover point for him as

he had plans to go on to Batesville, Mississippi.

Price further testified that when they arrived at the motel in Memphis, he checked into Room 238. According to Price, the money in the blue tote bag was not his and he had no interest in the drug transaction. He admitted meeting the confidential informant, but denied that he ever indicated to him that he was interested in buying drugs.

Price testified that no one ever mentioned the subject of drugs to him at any time; that he carried the blue tote bag at Patnett's request and took it to the informant's room at Patnett's request; that the bag was locked and Price did not know what was in it; that Price's conversation with the informant had nothing to do with drugs; that he conversed solely about tourism and the sights in the Memphis area.

Price testified that he asked to go to the bathroom when Patnett and the informant began to talk because he believed they wanted to have a private conversation. When Patnett left the apartment with the tote bag, Price stayed behind because he still had not found out the route to Batesville.

Price admitted greeting Blum when he entered the informant's room, but denied having any conversation with him. Price recalled hearing Patnett say "fifteen" in a loud voice, and so he turned to see what Patnett was talking about. Price admitted looking into the suitcase that Blum had brought into the room, but claimed that he saw nothing but clothing. He claimed that he expressed no interest in examining the contents of the suitcase. Price also testified that he was not Patnett's partner in a drug deal, and that no one had mentioned such a deal to him.

Price was asked about statements which he made on the videotape. In reference to the word "moving," Price said the statement is that he would be moving on to Batesville once he got information on how to get there. With respect to the words, "next time we're going up," that meant if Patnett came with him on his next trip from Chicago, they would go to Batesville together. With respect to his tape-recorded question, "Where

is he?," Price said he was referring to when Blum would be arriving because Price was interested in leaving for Batesville.

On cross-examination, Price testified that he was watching television when Patnett and the informant opened the suitcase, that he never saw the contents of the suitcase, and that none of its contents ever came out. Price was asked whether he told the informant to "go through it" in reference to the tote bag, but Price said the actual words were "go to it."

At the close of defendant's proofs, Price did not renew his motion for judgment of acquittal, and the case was argued and the jury charged. The jury returned with a verdict of guilty, and Defendant was subsequently sentenced to 151 months imprisonment.

Price now appeals his conviction challenging (1) the District Court's decision not to allow him to admit into evidence at trial Desmond Patnett's hearsay statement under Fed.R.Evid. 804(b)(3); and (2) the sufficiency of the evidence at trial, as a whole.

1. Patnett's statement was a statement made in "question-and-answer" form. The questions posed and answers given by Patnett were transcribed by the questioning officer, Detective Berryhill. Patnett then signed the transcribed statement and initialed each page. The full text of the statement is as follows:

Q: Desmond, you were arrested at the Motel 6 at 7145 E. Brooks Rd. Rm # 124, here in Memphis, TN. Who are the individuals in the room with you?
A [by Patnett]: I really only [know] Mike Price, or Michael Price and a guy I know as Rick. That's about it.
Q: Who was the fourth (4th) person in the room?
A: I don't know his name.
Q: Desmond, in your own way explain why you are here in Memphis?
A: Huh, to purchase some narcotics.
Q: Who are you to purchase the narcotics from?
A: I don't know the guy['s] name that came into the room.
Q: What type of narcotics were you to purchase?
A: Cocaine.
Q: How much cocaine were you to purchase, and how much were you intending to pay?
A: Fifteen kilos I think, and I was going to pay $10,000 a piece.

## III. DISCUSSION

### A. THE REFUSAL TO ADMIT PATNETT'S HEARSAY STATEMENT

The parties are in agreement that the standard of review of the District Court's evidentiary ruling on the admissibility of a hearsay statement under Fed.R.Evid. 804(b)(3) is for abuse of discretion. *See United States v. Hilliard,* 11 F.3d 618, 619 (6th Cir.1993)

As indicated above, during trial, Price sought to admit into evidence a post-arrest statement made by Desmond Patnett while in police custody. Defendant argued that the statement fell within the hearsay exception set forth in Fed.R.Evid. 804(b)(3) as a "statement against penal interest" of an unavailable witness. In the statement, Patnett related that he was in Memphis to purchase fifteen kilograms of cocaine; that Price traveled with him to help him drive; that although he did not tell Price and the others traveling with him why he was going to Memphis, he "assumed they knew"; that he asked them to help him drive by "making them some sweet offers"; and that the money in the bag belonged only to him.[1]

Q: How did you meet the guy you were going to buy the cocaine from?
A: I just met him today through the guy named Rick.
Q: The duffle bag on the bed had several packages of cocaine; who brought the cocaine to the room?
A: The guy whose name I don't know.
Q: Were these the narcotics you were going to buy?
A: Yes.
Q: How much money did you bring with you to buy the cocaine.
A: One hundred and fifty thousand dollars ($150,000.00).
Q: Where did you have the money?
A: It was in Room # 229 with my friend [Kim] Minh.
Q: What was the money stored in?
A: A blue gym bag.
Q: The gym bag was locked; did anyone other than you have a key to the bag?
A: No.
Q: Who do [sic] the $150,000.00 belong to?
A: It was mine.
Q: What is the full name of the lady in Rm # 229?
A: I don't know, all I know is Minh.
Q: What is the role that Minh play [sic] in this ordeal?
A: Just to keep an eye on the money.

The District Court determined that Patnett's statement was not admissible under any theory, and specifically not under Fed. R.Evid. 804(b)(3) because of lack of corroborating circumstances clearly indicating its trustworthiness. We hold that the District Court erred in concluding that there were insufficient corroborating circumstances to indicate the trustworthiness of the statement and consequently erred in excluding Patnett's hearsay statement. The error, however, was harmless.

### 1. *Not All Of Patnett's Post-Arrest Statement Qualifies As A "Statement" Under Fed.R.Evid. 804(b)(3).*

Fed.R.Evid. 804(b)(3) provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

.    .    .    .    .

Q: How did Minh get to Memphis?
A: She drove a Volkswagen.
Q: What's the name of the guy in Room # 238?
A: Kevin Foster [sic; Fosten].
Q: How did Kevin Foster [sic] get to Memphis?
A: He drove in the van with me.
Q: What is Kevin's role in the ordeal?
A: He just help [sic] me drive.
Q: Whose van is it?
A: A friend ['s].
Q: How did Michael Price get here?
A: He rode in the van with me.
Q: What's Michael's part in this ordeal?
A: Same thing, to help me drive.
Q: Out of the four (4) of you driving down from Chicago, the money belonged to only you?
A: Yes.
Q: Did any of the others know what you were coming to Memphis for?
A: I didn't tell them what I was coming to get, I just assumed they knew. I just asked them to help me drive by making them some sweet offers.
Q: What type of offers?
A: I offered Kevin a motorcycle and the rest some money.
Q: What were you going to do with the cocaine?
A: Sell it back in Chicago.
Q: How long have you been selling cocaine?
A: Between five (5) and six (6) years.
Q: How did you accumulate $150,000.00?
A: Some is mine and some I borrowed.
Q: How much did you borrow, and how much was yours?

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far intended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

■ The Supreme Court has adopted a narrow definition of the word "statement" for the purposes of Rule 804(b)(3). In *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the Supreme Court held that each individual declaration or remark made by a declarant constitutes a

A: I borrowed $100,000.00 and $50,000.00 was mine.
Q: Not being employed, how could you come up with $50,000.00?
A: Hussle most of it up, saved it, and sold a car, just pulled the money to get here.
Q: You said you hustled it (money) up, does this mean from your prior drug sales?
A: Huh, huh. Yeah.
Q: Out of the fifteen (15) kilos, how much/many belong to you?
A: About five (5).
Q: How many other people are expecting cocaine?
A: About 6-8 guys, but three (3) gave the other $100,000.00.
Q: The three (3) guys that gave you money, are the[y] selling cocaine in Chicago.
A: Every once in a while they hussle but not every day.
Q: Do any of the three work?
A: No.
Q: What are the names of the guys you owe?
A: I don't want to give their names right now.
Q: Is there anything you would like to add to this statement?
A: No, not right now.
Q: Do you give this statement freely and voluntarily, without any threats or promises?
A: Yes.
Q: Can you read and write without the aid of glasses?
A: Huh, huh. Yes.
Q: I will ask now to read these four (4) pages of your statement, sign the last page an initial the first 3 pages indicating that what you have read is correct, do you understand?
A: Yes.

"statement" and that "only those declarations or remarks within the confession that are individually self-inculpatory" are admissible under the rule. Collateral statements, even ones neutral as to interest, should be treated the same as other hearsay statements that are generally not admissible. Collateral statements may not be admissible based on their proximity to self-inculpatory ones. The *Williamson* Court held:

> In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self—inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

*Id.* at 600–01, 114 S.Ct. at 2435. Whether an individual statement is admissible under Rule 804(b)(3), thus, is a question that "can only be answered in light of all the surrounding circumstances." *Id.* at 604, 114 S.Ct. at 2437.

■ The post-arrest statement made by Patnett to Detective Berryhill is written in a line-by-line question and answer format, resulting in what is, in effect, a series of individual statements under *Williamson.* Patnett's written statement could easily have been redacted so that those individual collateral statements that are not self-inculpatory could be excluded. In light of the Supreme Court's holding in *Williamson,* the District Court should have excluded any non-self-inculpatory assertions made by Patnett in his post-arrest statement because they do not meet the definition of "statement" as it applies to Rule 804(b)(3), but it should have admitted those portions which were self-inculpatory.[2]

## 2. The Self–Inculpatory Assertions In Patnett's Statement Are Admissible Under Rule 804 Because Corroborating Circumstances Clearly Indicate The Trustworthiness Of The Statement.

■ This Court has determined that three conditions must be met before a district court may admit evidence under Rule 804(b)(3):

(1) The declarant must be unavailable to testify;

(2) The statement must subject the declarant to criminal liability in a real and tangible way; and

(3) Corroborating circumstances must clearly indicate the trustworthiness of the statement.

*Hilliard, supra,* at 619, citing *United States v. Arthur,* 949 F.2d 211, 216 (6th Cir.1991).

■ The District Court denied the admission of Patnett's hearsay statement solely because of the insufficiency of "corroborating circumstances". With respect to the other *Hilliard* factors, the parties agreed that Patnett was unavailable as a witness.[3] Both parties also agreed that at least parts of Patnett's statements tend to subject him to criminal liability. The District Court concluded, however, that Patnett's statements were inadmissible because there were no corroborating circumstances that clearly indicated the trustworthiness of the statement. The District Court, however, failed to appreciate that Rule 804(b)(3) does not require that *the information within the statement* be clearly corroborated; it requires only that there be corroborating circumstances which clearly indicate the trustworthiness of the statement, itself. As the Seventh Circuit observed in *United States v. Garcia,* 986 F.2d 1135 (7th Cir.1993), the corroboration

---

**2.** This conclusion is supported by *United States v. Vegas,* 27 F.3d 773 (2nd Cir.1994), where the court found no error in the district court's ruling that portions of the defendant's statement which tended to exonerate another were not admissible under Rule 804. The court determined that "[r]egardless whether other portions of Vegas' statement were against his penal interest, the part by which Vegas sought to exonerate Virella and Guzman was not...." *Id.* at 782.

**3.** The record in this case does not establish that Patnett was "unavailable" as required by Rule 804(b)(3), although Patnett was, in fact, a fugitive at the time of Price's trial. However, for purposes of this appeal, the government concedes that Patnett was "unavailable."

requirement of this rule is a preliminary question as to the admissibility of the statement, not an ultimate determination as to the weight to be given to that statement. The Seventh Circuit held in *Garcia* that the trial court does not need to be completely convinced as a prerequisite to admission that the exculpatory statements are true. Rather, the trial court need only find that sufficient corroborating circumstances exist which indicate the statement's trustworthiness. The jury may then make the ultimate determination concerning the truth of the statements. *Id.* at 1141.

Rule 804 does not describe precisely what type of corroborating circumstances clearly indicate trustworthiness, but case law has identified three circumstances which are particularly relevant. In *United States v. Silverstein,* 732 F.2d 1338, 1346 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985), the court found that one important corroborating circumstance exists if the involved parties do not have a close relationship. Two additional factors were identified in *United States v. Garcia,* 897 F.2d 1413, 1421 (7th Cir.1990): (1) the statement was made after the declarant had been advised of his *Miranda* rights, and (2) there was no evidence that the declarant made the statement in an effort to curry favor with the authorities.

Applying the factors identified in *Silverstein* and *Garcia* to the facts in this case, it is clear that there are sufficient corroborating circumstances. There is no evidence that Patnett had any personal interest in exonerating Price. The two men had known each other for only three months and were not friends. Patnett's written statement was presented at trial, and it clearly indicated that he had made the statement voluntarily after having been advised of his *Miranda* rights. Further, there is no evidence that Patnett made the statement in an attempt to curry favor with the authorities. Based on these proofs, we find that there are sufficient corroborating circumstances that clearly indicate the trustworthiness of Patnett's hearsay statement.

Just as importantly, the evidence at trial did independently corroborate a number of parts of Patnett's statement. For example, his statement that he came to Memphis to purchase fifteen kilos of cocaine is corroborated by the testimony of Detective Gerold Blum who was the undercover police officer that had been tipped off by a confidential informant that a drug transaction was going to take place at the Motel 6. Blum testified at trial that he brought the suitcase with 15 kilos of cocaine in it to the motel for purchase by the defendants and that when he opened the suitcase to flash the drugs, Patnett said, "Fifteen?" to which Blum responded "yes".

In addition, the price Patnett said he was going to pay for the cocaine, $10,000 per kilogram, matched almost exactly the amount of money Patnett and the others were found with—$151,000 in cash to pay for the 15 kilograms.

■ Evidentiary rulings on the admission of evidence under Fed.R.Evid. 804 are left to the discretion of the trial court. *United States v. Garcia, supra,* 986 F.2d 1135. However, the court abuses its discretion as to the trustworthiness of a statement under Rule 804(b)(3) "when it refuses to allow into evidence statements that are corroborated by other substantial evidence." *United States v. Hilliard, supra,* 11 F.3d. at 616. The court in *United States v. Garcia,* specifically said that "a trial court's determination of the trustworthiness of an out-of-court statement should be upheld unless the finding is clearly erroneous." 897 F.2d at 1421.

Based upon the foregoing discussion, we find, in this case, that the District Court's refusal to admit Patnett's statement for lack of corroborating circumstances of trustworthiness was clearly erroneous. The self-inculpatory portions of the statement should have been admitted.

### 3. *The District Court's Error In Not Admitting Patnett's Hearsay Statement Is Harmless Error.*

■ Although a district court abuses its discretion as to the trustworthiness of a statement pursuant to Rule 804(b)(3) "when it refuses to allow into evidence statements that are corroborated by other substantial

evidence," *Hilliard, supra,* the error in this case was harmless. A trial court's error is harmless only if this Court is "convinced that the error did not influence the jury or had a very slight effect, and can say so with fair assurance." *United States v. Nagib,* 56 F.3d, 798, 805 (7th Cir.1995), quoting *United States v. Zapata,* 871 F.2d 616, 622 (7th Cir.1989).

In *Hilliard,* this Court held that while the district court abused its discretion in not admitting into evidence a hearsay statement pursuant to Rule 804(b)(3), the defendant's conviction would nevertheless be affirmed because the court's error was harmless:

> Despite the district court's error in failing to consider the appropriate factors in ruling on the admission of [the 804(b)(3) statement made by Wade], Hilliard's conviction must stand. Hilliard was charged with and convicted of aiding and abetting the possession of cocaine. Wade's claim of ownership of the cocaine, which in no way exculpates Hilliard, is thus not material evidence. Given the extensive testimony at trial supporting Hilliard's guilt on the counts of conviction, this court finds that the district court's exclusion of the hearsay evidence was harmless error.

11 F.3d at 620.

This case is factually and analytically similar to *Hilliard.* Price and Patnett were indicted for aiding and abetting each other in the attempted possession of cocaine with intent to distribute. Patnett's admissions against his penal interest in his hearsay statements in no way exculpate Price, especially in light of the decision in *Williamson* to exclude collateral statements that are not self-inculpatory in nature. Rather, they simply inculpate Patnett. For example, Patnett's admission in the hearsay statement that he was the one who was buying the cocaine does not exculpate Price—it merely inculpates Patnett. The fact that this does not help Price is made more evident by Patnett's indication later in the statement that Price was to assist in the driving to Memphis and that Patnett assumed Price knew what they were going to Memphis to do. In another part of the statement, Patnett said he asked Price and Fosten to help drive by "making them some sweet offers." Clearly, these statements, if admitted, would not have been helpful to Price.

Beyond this, there was ample independent evidence to convict Price: Price carried the money from the minivan to the motel room; Price carried the money to the informant's room; Price was left to keep surveillance and wait for the seller when Patnett left the informant's room; Price, along with Patnett, nodded his head when asked if the cocaine should be tested. In short, irrespective of the improperly excluded statements, the evidence at trial clearly established that Price's involvement in the cocaine transaction was extensive. In light of this substantial evidence of Price's aiding and abetting the attempted drug transaction, the district court's error was harmless.

## B. SUFFICIENCY OF THE EVIDENCE AT TRIAL

Price also argues that his conviction should be reversed because the evidence introduced at trial was insufficient to establish his guilt beyond a reasonable doubt.

### 1. Price's Failure At The Close Of All Proofs To Renew His Motion For Acquittal On The Basis Of Insufficiency Of The Evidence Limits The Scope Of Our Review.

Following the conclusion of the Government's case-in-chief, Price made a motion for judgment of acquittal, which the district court denied. Price did not renew his motion at the close of his defense proofs. Price, however, now re-asserts his insufficiency of the evidence argument in this appeal.

The usual standard of review applied when insufficiency of the evidence is raised is whether,

> after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.

*United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992).

We further stated in *Beddow* that

> This court will reverse a judgment for insufficiency of evidence only if this judg-

ment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial. It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.

*Id.* (citations omitted).

■ However, when the defendant moves for judgment of acquittal at the close of the government's case-in-chief, and defense evidence is thereafter presented but the defendant fails to renew the motion at the close of all of the evidence, he waives objection to the denial of his earlier motion, absent a showing of a manifest miscarriage of justice. *United States v. Glover,* 21 F.3d 133, 138 (6th Cir. 1994), *cert. denied,* 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 314 (1994). *See also, United States v. Morrow,* 977 F.2d 222, 230 (6th Cir.1992) (en banc), *cert. denied,* 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); *United States v. Cannon,* 981 F.2d 785, 789 (5th Cir.1993).

■ Phrased another way, where, as here, a defendant does not renew his motion for judgment of acquittal for insufficiency of the evidence at the close of all of the proofs, appellate review is limited to determining whether there was a "manifest miscarriage of justice." *United States v. Cannon, supra. See also, United States v. Cox,* 957 F.2d 264, 265 (6th Cir.1992); *United States v. Robles–Pantoja,* 887 F.2d 1250, 1254 (5th Cir.1989). A "miscarriage of justice" exists only if the record is "devoid of evidence pointing to guilt." *Id.*

■ As we observed earlier, evidence was presented at trial which established that Defendant Price assisted Patnett with the driving of the minivan on the trip from Chicago to Memphis. Evidence was further presented showing Price's direct involvement in the attempted drug transaction at the Motel 6. Detective Blum testified that Price met with the confidential informant who arranged the meeting with the undercover officer for the sale of the cocaine. Blum further testified that Price directed that the cocaine he brought to the motel room should be tested. Officer Leo Hampton offered testi-

mony and presented the video-taped evidence of his surveillance of the Motel 6 which showed that Price kept surveillance outside the room where the drug transaction was to take place. The video tape further showed Price carrying the bag that had the $150,000 for the purchase of the cocaine from the minivan to the motel room and from Patnett's room to the confidential informant's room.

The foregoing clearly establishes that the record in this case is not "devoid of evidence pointing to guilt." Furthermore, even if we were to apply the *Beddow* sufficiency of the evidence standard, we would find that the evidence at trial was sufficient to sustain Defendant Price's conviction.

As indicated, under *Beddow,* evidence will be found to have been sufficient if "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." 957 F.2d at 1334.

■ Price was charged with aiding and abetting in the attempted possession of cocaine with the intent to distribute. To be found guilty of aiding and abetting, the defendant must, "in some sort associate himself with the venture, that he participate in it as in something he wishes to bring about, that he seek by his action to make it succeed." *United States v. Bryant,* 461 F.2d 912, 919–20 (6th Cir.1972). To convict a person of an attempt to commit a drug offense, the Government must establish two elements: (1) the intent to engage in the proscribed criminal activity; and (2) the commission of an overt activity that constitutes a substantial step toward commission of the crime. *United States v. Pennyman,* 889 F.2d 104, 106 (6th Cir.1989).

This Court has held that the term "attempt" is to be construed in a "broad and conclusive manner." *United States v. Reeves,* 794 F.2d 1101, 1103 (6th Cir.1986), *cert. denied,* 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). The court in *Pennyman* delineated further that

Because of problems of proving intent in attempt cases and the danger of convicting

for mere "thoughts, desires or motives," we require that the "substantial step" consist of "objective acts [which] . . . mark the defendant's conduct as criminal in nature." [T]he defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics.

889 F.2d at 106 (citations omitted).

Evidence is sufficient to sustain a conviction for criminal attempt, if it shows that the defendant's conduct goes beyond "preliminary activities," and "a fragment of the crime [was] essentially . . . in progress." *United States v. Dolt,* 27 F.3d 235, 239 (6th Cir.1994), citing *United States v. Hadley,* 918 F.2d 848, 853 (9th Cir.1990).

In this case, there was sufficient evidence introduced at trial so that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Beddow, supra.* Specifically, there was sufficient evidence presented at trial from which the jury could infer that Price intended to possess cocaine with intent to distribute and that his actions of assisting in the driving, standing surveillance, participating in the examination of the cocaine, and carrying the bag of money, taken as a whole, constituted a substantial step toward the commission of the contemplated crime in this case.

## IV. CONCLUSION

For all the foregoing reasons, we AFFIRM the conviction of Michael Price.