NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0517n.06

No. 10-5027

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 25, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| FREDERICK DEWAYNE GROSS, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    COLE and ROGERS, Circuit Judges; and SARGUS, District Judge.[*]

**COLE, Circuit Judge.** A jury convicted Defendant-Appellant Frederick Gross of one count of being an unlawful drug user in possession of a firearm and one count of being a felon in possession of a firearm. Gross appeals his conviction, arguing that the district court improperly dismissed a prior criminal complaint without prejudice, the prosecutor improperly vouched for the credibility of a trial witness, and insufficient evidence supports the jury verdict. We **AFFIRM**.

## I. BACKGROUND

On April 8, 2008, Detective James Vivrette and Officer John Donegan of the Metro Nashville Police Department responded to a call about an assault with a weapon in the University Court area involving a black male wearing a brown jacket, khaki pants, and a white t-shirt. While the officers

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Court for the Southern District of Ohio, sitting by designation.

were patrolling in their vehicles, Vivrette saw a man fitting the suspect's description in his rearview mirror, and noticed that the man's jacket was leaning heavily to one side as if there were something heavy in his pocket. The man was Frederick Gross. Vivrette approached Gross and asked to speak with him, but Gross ran away, cutting through a fence between two apartment buildings. While chasing after Gross, Vivrette ran into Dontae Davis, who told Vivrette that a man had pointed a gun at Davis and run through Davis's girlfriend's apartment, 904A. The officers eventually caught up with Gross, who admitted to running through apartment 904A and leaving his brown jacket inside. The officers recovered the jacket from a couch in the apartment, along with a gun that was lying on the floor three to four feet away. Inside the jacket's pocket was a crack pipe, a bag of fake crack, and an empty cocoa butter tube.

When questioned, Gross admitted that the jacket and the contents of its pockets belonged to him, but denied that the gun was his. He also told Officer Vivrette that he had been "getting high" that morning and that he had had a cocaine problem for a "long time." (Trial Tr. vol. III, Dist. Ct. Docket No. 71, at 98-99 (internal quotation marks omitted).) Gross had a prior felony conviction.

On November 5, 2008, the government filed a criminal complaint against Gross for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. On March 4, 2009, Gross filed a motion to dismiss the complaint with prejudice on Speedy Trial Act ("Act") grounds, because he had yet to be indicted and the Act's thirty-day deadline had long passed. The government conceded a violation of the Act, but argued that the complaint should be dismissed without prejudice. On March 16, 2009, the magistrate judge dismissed the complaint without prejudice.

On March 9, 2009, the government filed a second criminal complaint against Gross, this time alleging that he had possessed a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924.  The grand jury returned a two-count indictment on March 25, 2009, charging Gross with being a felon in possession of a firearm and an unlawful user of a controlled substance in possession of a firearm.  Gross did not challenge the indictment.

Gross went to trial, and the jury convicted him on both counts.  The district court sentenced Gross to concurrent terms of fifteen years' imprisonment on each count, the mandatory minimum.  Gross timely appealed.

## II.  ANALYSIS

### A.  Dismissal of the Original Indictment

#### 1.  Waiver

Gross's first argument is that the district court should have dismissed the original complaint with prejudice.  Before proceeding to the merits, we must address the government's contention that Gross has waived this issue by not challenging the subsequent indictment, for which he was tried and convicted.  The government's argument is meritless.

The government argues that a defendant waives his right to challenge the dismissal without prejudice of a complaint if that defendant does not also challenge the subsequent indictment on Speedy Trial Act grounds.  To support its contention, the government relies on 18 U.S.C. § 3162(a)(2), which states that "[f]ailure of the defendant to move for dismissal [of the indictment] prior to trial . . . shall constitute a waiver of the right to dismissal under this section."  The government then combines this provision with 18 U.S.C. § 3161(d), which states that, when a

complaint is dismissed for a violation of the Act, "the provisions of subsections (b) and (c) of this section shall be applicable with respect to [any] subsequent indictment" arising out of the same factual scenario. 18 U.S.C. § 3161(b) and (c), respectively, simply state the time limits for bringing an indictment and bringing a case to trial in compliance with the Act.

The cited provisions amount to nothing more than (1) a defendant wishing to assert his rights under the Act must do so before trial; and (2) the Act time limits restart with the filing of a subsequent indictment. Thus, if there had been a new Act violation in connection with the subsequent indictment, Gross would have been required to move for dismissal on the subsequent indictment before trial. This exact scenario occurred in *United States v. Moss*, 217 F.3d 426 (6th Cir. 2000), where the first indictment was dismissed without prejudice on Speedy Trial Act grounds, and Moss later moved for dismissal of the subsequent indictment for a new and independent Act violation. *Id.* at 429. Here, however, Gross's motion to dismiss the original complaint was timely and there was no new and independent Act violation in connection with the subsequent indictment, so the statutory provisions cited by the government do not apply.

The lack of merit in the government's position is further illustrated by the fact that we have repeatedly reviewed the dismissal without prejudice of an earlier indictment for Speedy Trial Act violations in situations indistinguishable from this one. *See United States v. Robinson*, 389 F.3d 582 (6th Cir. 2004) (defendant did not move to dismiss the subsequent indictment); *United States v. Howard*, 218 F.3d 556 (6th Cir. 2000) (same); *United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994) (same); *United States v. Beigali*, 405 F. App'x 7 (6th Cir. 2010) (unpublished disposition) (same). In fact, because the dismissal of an indictment without prejudice is an unappealable interlocutory

order, *United States v. Bratcher*, 833 F.2d 69, 73 (6th Cir. 1987), appeal of the ultimate conviction on a subsequent indictment is the *only* method by which a defendant may seek this Court's review of such an order. *See Moss*, 217 F.3d at 430 n.1. Thus, Gross did not waive his challenge to the district court's dismissal of the original indictment without prejudice.

### 2. Dismissal without Prejudice

Turning to the merits, it is undisputed that a violation of the Act occurred in connection with the original complaint. *See* 18 U.S.C. §§ 3161(b), 3162(a)(1). The only question before the district court was whether the required dismissal should be with or without prejudice. The Act allows for both types of dismissal and does not establish a default presumption. *Robinson*, 389 F.3d at 586 (citing 18 U.S.C. § 3162(a)(2); *United States v. Taylor*, 487 U.S. 326, 334 (1988)). Instead, the Act prescribes three factors that the district court must take into account in making such a determination: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). Where, as here, the district court sets forth written findings with regard to these factors, we apply a "modified abuse of discretion standard," reversing the district court's findings only if they are clearly erroneous. *Moss*, 217 F.3d at 430-31. As the Supreme Court has explained our task:

> [a] judgment that must be arrived at by considering and applying statutory criteria . . . constitutes the application of law to fact and requires the reviewing court to undertake more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute. Nevertheless, when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed.

*Taylor*, 487 U.S. at 337.

Here, the district court properly considered the statutory factors and explained its reasoning for dismissing the complaint without prejudice. The court first considered the seriousness of the offense, noting that Gross faced a possession charge, had an extensive criminal history that included aggravated assault and burglary convictions, and qualified for a fifteen-year mandatory minimum as an armed career criminal. Based on these facts, the district court found that the offense was serious. Gross concedes this point.

Next, the district court considered the circumstances surrounding the delay, finding that the government's failure to obtain a timely indictment was not "excessively protracted" and was the result of a mistake or oversight rather than bad faith or an attempt to gain a tactical advantage. Gross argues that this factor weighs in favor of dismissal with prejudice because the government was the sole cause of the delay and did not explain why the oversight occurred. However, the government explained in its response to Gross's motion to dismiss that a new prosecutor had taken over the case and mistakenly believed that Gross had already been indicted. Thus, the district court's finding that there was no bad faith was not clearly erroneous, and the court did not abuse its discretion in determining that this factor weighed in favor of dismissal without prejudice. *See Pierce*, 17 F.3d at 149 ("Where there is no affirmative misconduct by either party, the court's conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion.").

Finally, the district court considered the impact of reprosecution on the administration of justice. "'The main considerations that the courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the

government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act.'" *Robinson*, 389 F.3d at 589 (quoting *Howard*, 218 F.3d at 562). The court noted that Gross did not "identify any particular prejudice as a result of th[e] delay," and that the government had provided Gross with discovery materials in January 2009, despite the lack of indictment. The court also reiterated that the record did not suggest any intentional prosecutorial misconduct or any attempt by the government to gain a tactical advantage by the delay. Gross argues that he was prejudiced because he was imprisoned in particularly harsh conditions during the delay, which made it difficult to prepare for trial. But Gross did not make this argument in his motion to dismiss and only mentioned the prison's conditions in passing before the district court dismissed the complaint. The district court did not abuse its discretion in failing to take into account information that had not yet squarely been brought to its attention.

Because the court carefully analyzed the statutory factors and its findings were not clearly erroneous, the district court did not abuse its discretion in dismissing the initial complaint without prejudice. As a result, we need not reach Gross's argument, raised for the first time in his reply brief, that the government's subsequent indictment constituted improper "gilding." (*See* Reply Br. 9-13.)

**B. Prosecutorial Misconduct**

Gross's second claim is that his conviction should be reversed because the prosecutor improperly vouched for the credibility of government-witness Dontae Davis during closing argument. Gross concedes that, because his counsel failed to object during trial, we review this claim for plain error. *See United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). To succeed under the plain error standard, Gross must prove that (1) an error occurred; (2) the error was obvious

or clear; (3) the error affected his substantial rights; and (4) the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 376-77 (internal quotation mark omitted). In reviewing prosecutorial-misconduct claims, we must first determine whether the prosecutor's statements were improper. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). If so, "we then look to see if they were flagrant and warrant reversal." *Id.*

Gross finds fault with two of the government's comments during closing argument. First, after summing up the evidence, the prosecutor stated, "Common sense. Dontae Davis was a credible witness." (Trial Tr. vol. IV, Dist. Ct. Docket No. 72, at 227.) On rebuttal, a different prosecutor stated, "So think about [Davis's] motivations, and I would suggest that his only motivation that he was—had no motivation to lie because he didn't have conviction." (*Id.* at 246.) Assuming the statements were improper, however, neither rises to the level of flagrancy, and therefore Gross is not entitled to a new trial.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *Id.* at 550. We review such claims from the jury's perspective, finding misconduct "when a jury could reasonably believe that the prosecutor was . . . expressing a personal opinion as to the witness's credibility." *Id.* at 551. However, "the government may attempt to explain why, based on the facts, [a] witness's testimony is honest after the same has been attacked by the defense." *Henry*, 545 F.3d at 379.

The prosecutor's statement that "Dontae Davis was a credible witness" was arguably improper under *United States v. Henry*, 545 F.3d 367. In *Henry*, we held that the prosecutor's

statement that a witness gave "highly credible" testimony was improper because it was a "blunt comment[] of personal belief," even though the comment was made in the course of discussing the evidence. *Id.* at 380 (internal quotation marks omitted) (citing *Francis*, 170 F.3d at 550; *United States v. Bess*, 593 F.3d 749, 756 (6th Cir. 1979)). Here, the prosecutor explicitly opined on the credibility of the witness. *Cf. Bess*, 593 F.2d at 756 (citing *United States v. Daniel*, 422 F.2d 816 (6th Cir. 1970), for the proposition that "personal belief arguments [are] improper, even when it [i]s clear that they were based solely on the testimony advanced at trial").

The other challenged statement, "I would suggest that his only motivation that he was—had no motivation to lie because he didn't have conviction," was likewise questionable. In *United States v. Krebs*, 788 F.2d 1166 (6th Cir. 1986), the prosecutor stated during closing argument, "But I want to suggest to you that in this trial testimony [the witness] was telling the truth . . . . Basically, she had no reason to lie," and "she is basically telling the truth in this case because she had no reason to lie." *Id.* at 1176 (internal quotation marks omitted). We held that, "[a]lthough the prosecutor's statements 'I want to suggest . . . .' arguably may not express a personal opinion, the effect of the two statements when considered together c[ould] be 'reasonably construed to be based on personal belief.'" *Id.* at 1176-77 (citation omitted) (quoting *Bess*, 593 F.2d at 756). In another case, we found it "inexcusable" for the prosecutor to state, "I submit to you that Robin and Richie Patrick are credible witnesses." *United States v. Carroll*, 26 F.3d 1380, 1389 (6th Cir. 1994). While it is unlikely that the prosecutor in the instant case meant to express a personal opinion, a reasonable jury could interpret "I would suggest" as a statement of personal opinion or belief. For that reason, the prosecutor's second statement was also arguably improper.

However, a prosecutor's improper statements only warrant reversal if they are flagrant. *Henry*, 545 F.3d at 380. We have found four factors relevant to a statement's flagrancy: "(1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused." *Id.* at 376. Here, the prosecutor's remarks, while clearly improper, were isolated, and it is unlikely that the prosecutor engaged in purposeful misconduct; "I would suggest" is a turn of phrase commonly employed in legal argument, and its use here is more reasonably viewed as a slip of the tongue than a deliberate attempt to sway the jury with personal opinion. *Cf. Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (holding that prosecutor's frequent use of "I believe" and "I think" was improper, but did not rise to a due process violation because, among other reasons, "the phrases appeared to be the result of a nervous habit" (internal quotation marks omitted)). The direct comments on Davis's credibility are more problematic; the line between proper and improper discussion of witness credibility is fine at best. As such, it may be best for prosecutors to refrain from commenting on the issue altogether. *Cf. Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005) ("It is patently improper for a prosecutor . . . to comment on the credibility of a witness . . . ."). Those who do choose to make such remarks must walk the line. In this case, the prosecutor the prosecutory does not appear to have made a deliberate misstep. Finally, as discussed below, the case against Gross was strong and it is therefore unlikely that the prosecutor's misstatements had much effect. Based on the considerations above, the prosecutor's comments were not flagrant and, thus, did not rise to the level of plain error.

## C. Sufficiency of the Evidence

Gross's final claim is that the government introduced insufficient evidence at trial to support his conviction. He raised this objection to the district court in a motion for acquittal at the close of the government's case-in-chief, which the district court denied. (*See* Trial Tr. vol. III, Dist. Ct. Docket No. 71, at 203-05.) The government contends that, because Gross failed to renew his motion for acquittal at the close of all the evidence, he is subject to a strict "manifest miscarriage of justice" standard of review, relying on *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). However, the rule in *Price* applies by its own terms only "when the defendant moves for judgment of acquittal at the close of the government's case-in-chief, *and defense evidence is thereafter presented* but the defendant fails to renew the motion at the close of all the evidence." *Id.* (emphasis added). Here, the defense presented no evidence, and the government gave no rebuttal; the close of the government's case-in-chief *was* the de facto close of all the evidence, and there was no need for Gross to renew his motion.

As a result, we review the denial of Gross's motion for acquittal de novo, determining "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "'Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *Id.*

Gross argues that the government's evidence was insufficient in two ways. First, he contends that there is insufficient evidence to support the jury's conclusion that Gross possessed a gun,

because Davis was the only witness who testified that he saw a gun on Gross's person, and Davis is not a credible witness. However, "[w]e may not rule on a challenge to witness credibility in reviewing the denial of a motion for acquittal because doing so 'would invade the province of the jury as the sole finder of fact in a jury trial.'" *United States v. Graham*, 622 F.3d 445, 449 (6th Cir. 2010). Attacks on witness credibility challenge the quality of the government's evidence, not its sufficiency. *Id.*

In any event, the government presented sufficient evidence from which a jury could conclude that Gross possessed a firearm. At trial, Detective Vivrette testified to the following relevant facts: On April 8, 2008, he received notification of a call about an assault in University Court involving a black man with a weapon who was wearing a brown jacket, khaki pants, and a white t-shirt. (Trial Tr. vol. III, Dist. Ct. Docket No. 71, at 73-74.) Vivrette spotted Gross in that area wearing clothes that matched the description, and noticed that Gross's jacket was sagging in a manner consistent with a gun in the pocket; when Vivrette stopped to talk to Gross, Gross ran. (*Id.* at 79-80, 85.) In chasing after Gross, Vivrette ran into Davis, who stated that someone had just pointed a gun at him and ran through apartment 904A. (*Id.* at 81-82.) Vivrette eventually caught up with Gross, who was no longer wearing the jacket. (*Id.* at 85.) Officers recovered a brown jacket and a gun from apartment 904A; the gun was on the floor approximately four feet from the jacket. Gross admitted to running through the apartment and leaving the jacket there. (*Id.* at 88-90.) Davis testified at trial that the black man in a brown coat who ran through apartment 904A had a gun in his hands. (*Id.* at 130-31.) Based on this evidence, a rational juror could find beyond a reasonable doubt that Gross possessed a firearm.

Second, Gross argues that there was insufficient evidence to establish that he was an unlawful user of controlled substances at the time of the firearm possession. This argument is equally meritless. To establish that Gross was an unlawful user of a controlled substance, the government had to prove that Gross "was engaged in a pattern of regular and repeated use of a controlled substance during a period that reasonably covers the time a firearm was possessed." *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009). At trial, Vivrette testified that there was a crack pipe and some fake crack in the pocket of the brown jacket recovered from apartment 904A. (Trial Tr. vol. III, Dist. Ct. Docket No. 71, at 94.) He also testified that Gross had admitted that the drug paraphernalia belonged to him. (*Id.* at 100.) Vivrette further testified that Gross had admitted to "getting high" when asked if he were presently under the influence of alcohol or drugs, and that he had had a cocaine problem for "a long time." (*Id.* at 98-99 (internal quotation marks omitted).) From Gross's own admissions, a reasonable juror could find beyond a reasonable doubt that Gross was an unlawful user of cocaine.

Because the government presented sufficient evidence to support Gross's conviction, the district court did not err in denying Gross's motion for acquittal.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.