**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Steven BENTON, Defendant–Appellant.**

**No. 01–6182.**

United States Court of Appeals,
Sixth Circuit.

May 12, 2003.

BEFORE: MOORE and GIBBONS, Circuit Judges; and COHN, District

Judge.*

COHN, District Judge.

This is a criminal case. Defendant–Appellant Steven Benton (Benton) appeals from his conviction under 21 U.S.C. § 841(a)(1), possession with intent to distribute a schedule II controlled substance (cocaine base more than 5 grams). Benton argues that there was insufficient evidence to sustain the conviction, that the government encouraged witness testimony that it knew to be false, and that the government failed to reveal a deal it made with a witness. The government argues that the evidence was sufficient to sustain the conviction, that it did not encourage false testimony, and that it did not have a deal with the witness in question. For the reasons that follow, the judgment of the district court will be affirmed.

## I. Factual Background and Procedural History

Benton went to the trailer home of his long-time friend Johnny Finch (Finch) on the evening of September 17, 2000. The next day Benton called Shannon Robinson (Robinson), with whom he had previously had a relationship, and asked her to meet him at Finch's trailer because he was trying to get back together with her. She went to the trailer around noon. Robinson also had an on-again, off-again relationship with Tyrone Sidnor, the father of her four children. Sidnor went to the trailer that afternoon and asked Robinson to go home with him, but she refused and told him she was going to get back together with Benton.

Probation Officer Poindexter (Poindexter) was overseeing Robinson at the time because she was on probation for trafficking cocaine. Robinson had used cocaine for over ten years and had twice been convicted of trafficking cocaine. After Robinson refused to leave with him, Sidnor called Poindexter and told him that Robinson was at Finch's trailer smoking crack cocaine.

Poindexter went to Finch's trailer with Russellville Police Department Officer Ann Stovall (Stovall) [1] and Logan County Deputy Sheriff Jimmy Phelps (Phelps) at approximately 10:00 pm on September 18, 2000 and knocked on the door. No one answered at first. Poindexter testified he saw Robinson and Benton sit down on the couch and saw Benton shove something between the couch cushion and the arm rest. He testified he saw this through a four to five inch gap between the curtains in the lower corner of the door. Benton testified that the window was "fuzzed up" and therefore opaque.[2] The two other officers testified they saw Benton through a window next to the door; Phelps testified he saw Benton sitting on one end of the couch making a motion like he was stuffing something beside the cushion or trying to hide something there, and Stovall testified she saw Benton "fidgeting to the side of the couch."

One of the officers knocked on the door of the trailer. After a delay of approximately two minutes, Finch opened the door. After receiving Finch's permission, the officers entered. Both Robinson and Benton were sitting on the couch when the officers entered. They patted down Rob-

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Ann Stovall later changed her name to Ann Stovall Phelps, and the record reflects both names.

2. Benton says in his brief that "several witnesses" indicated this, but the joint appendix includes only his own testimony on this point. J.A. at 168.

inson and Benton but found nothing on either one of them. There were no pipes or other drug paraphernalia found in the trailer. Poindexter checked the couch where Robinson had been sitting and found nothing. Poindexter also checked the cushion of the couch where he said he had seen Benton stuffing something into the couch; he found a small bag of cocaine there. Robinson said the cocaine belonged to Benton.

Stovall asked Benton if he had any money on him. He told her that he did not, but when she further searched him, she found $636 cash. There were six $100.00 bills in his wallet, and in his pocket he had one $20.00 bill, one $5.00 bill, and eleven $1.00 bills.

Although it was past Robinson's probationary curfew and she was seen in proximity to cocaine, she was allowed to go home without any questioning. Benton was arrested.

Benton was indicted on one count, 21 U.S.C. § 841(a)(1). Benton filed a motion to suppress, which was denied after a hearing. After a trial lasting two days, the jury reached a verdict of guilty. The district court sentenced Benton to sixty-three months imprisonment and four years supervised release.

Robinson testified at the trial. She admitted that her large amount of cocaine usage over the previous ten years could affect her memory. She also admitted that she has failed at least one drug test since September 18, 2000,[3] has twice been convicted of drug trafficking, and had an

outstanding warrant for stolen checks at the time of Benton's arrest. She testified she saw Benton selling cocaine to several people during the day in question. Benton also testified at trial. He said the drugs did not belong to him and he did not know they were in the couch. He said the officers told him that the reason he was being arrested was that he was the closest to the drugs.

## II. Discussion

The district court exercised jurisdiction under 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291.

### A. Sufficiency of the Evidence

■ "In order to appeal a conviction based on sufficiency of the evidence, a defendant must move for judgment of acquittal during the trial or within seven days after the jury is discharged pursuant to Fed.R.Crim.P. 29." *United States v. Horry*, 49 F.3d 1178, 1179 (6th Cir.1995).

The usual standard of review applied when insufficiency of the evidence is raised is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.

. . .

However, when the defendant moves for judgment of acquittal at the close of the government's case-in-chief, and defense evidence is thereafter presented but the defendant fails to renew the motion at the close of all the evidence, he waives objection to the denial of his earlier

---

3. Benton argues in his brief that she had failed "numerous" drug tests, while the government replies that it was only one. When asked, "Have you had dirty urine samples while you've been on probation?", Robinson replied, "Yes, I have." The prosecutor also asked, "Those, those are strict violations of your probation, aren't they?", to which she replied, "Yeah, they are." J.A. at 136. A reasonable inference from this testimony is that Robinson failed more than one drug test, but it does not provide any precise number. In any event, the number of times she failed a drug test is irrelevant, as the jury was aware that Robinson had failed at least one drug test.

motion, absent a showing of a manifest miscarriage of justice.

*United States v. Price*, 134 F.3d 340, 349–50 (6th Cir.1998) (citations omitted); *see also United States v. Morrow*, 977 F.2d 222, 230 (6th Cir.1992).

Here Benton moved for acquittal after the government's case in chief but failed to renew the motion at the close of his defense. He therefore may appeal based on sufficiency of the evidence but must proceed under the "manifest miscarriage of justice" standard of review. "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Id.* (quotation marks and citations omitted). Benton's reliance on *United States v. Messina*, No. 97–1961, 1999 WL 232692, 1999 U.S.App. LEXIS 7826 (6th Cir. April 15, 1999) (unpublished opinion) (holding defendant forfeited right to challenge sufficiency of the evidence), is unavailing because it does not address this situation. In *Messina*, the defendant did not move for acquittal on the charge in question at any time in the proceedings. *Id.*

To establish a violation of 21 U.S.C. § 841(a)(1), the government must prove "(1) knowing (2) possession of a controlled substance (3) with intent to distribute." *United States v. Christian*, 786 F.2d 203, 210 (6th Cir.1986). Benton argues that the government failed to prove the second and third elements.

He first argues that the government had insufficient evidence to prove possession because Robinson and Poindexter were not credible witnesses. He argues that Robinson was not credible because she is a cocaine addict, was pressured to testify for the government, and her testimony was inconsistent. He argues that Poindexter was not credible because he "had on numerous occasions, but to no avail, attempted through informants to purchase cocaine from" Benton. J.A. at 104.[4] We do not review witness credibility, however, as credibility determinations are reserved to the jury. *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir.1994) (holding that "[i]n cases in which we assess the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury"). We will not reverse based on the witnesses' asserted lack of credibility.[5]

Benton argues second that the government has not shown constructive possession because mere proximity to drugs, presence on the property where drugs are located, or association with a person who controls drugs is insufficient to support a conviction for possession. *See, e.g., United States v. Smith*, 20 Fed.Appx. 258 (6th Cir.2001) (unpublished opinion) (holding that showing defendant was in same car as drugs and appeared to be stoned was insufficient to establish actual possession or intent to distribute); *United States v. Vasquez–Chan*, 978 F.2d 546 (9th Cir.1992) (holding that a houseguest's knowledge of drug's existence and location is insufficient to establish possession). The government did not need to show constructive possession here, however, as the evidence showed actual possession. Robinson said she saw Benton selling cocaine earlier in the day and identified the cocaine found in the couch as belonging to Benton. The three officer witnesses said they saw Benton stuff something in the couch, and they found the cocaine right where they saw

---

**4.** The government correctly notes that the record only indicates one attempted purchase by an informant of drugs from Benton, not "numerous" attempts.

**5.** We note that Benton does not challenge the credibility of Stovall and Phelps, yet their testimony also could have contributed to the conviction.

him stuffing something. A jury could reasonably infer actual possession from this testimony; the government had no need to show constructive possession.

 Benton also challenges the third element, intent to distribute. He notes that none of the witnesses testified specifically as to Benton's intent. The evidence presented was sufficient to establish intent to distribute as well as possession. Viewed in the light most favorable to the government and assuming that the jury found the witnesses credible, a rational trier of fact could have found the intent to distribute beyond a reasonable doubt. *See United States v. Price*, 134 F.3d 340, 349–50 (6th Cir.1998). There was certainly sufficient evidence to find that there was not a manifest miscarriage of justice. *See id.* Robinson testified that she saw Benton sell cocaine "several times" to "quite a few other girls that was over there." J.A. at 131. Approximately 10 grams of cocaine were found in Benton's immediate vicinity, which Stovall testified was a "large amount" that was more than the amount someone would normally have to smoke personally. Robinson testified that it was worth about $350 to $400. There were no crack pipes or other drug paraphernalia found in the trailer, which the jury could have interpreted to mean that the cocaine was not for personal consumption. Benton argues that even though he had $636 on his person, the denominations of the money (six $100, one $20, one $5 and eleven $1 bills) do not indicate that he was making a number of small sales of cocaine, as Robinson testified. Although the evidence of the denominations of the bills has some tendency to undermine the claim that Benton made numerous small sales of cocaine, the remaining evidence-Robinson's testimony, the amount of cocaine, the total amount of money, and the lack of paraphernalia-is enough to sustain a conviction.

### B. False Testimony

 Benton failed to preserve his complaint of false testimony for review, because he made no motion for a new trial and he never accused the government of using false testimony until his appeal. The standard of review is therefore for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The analysis under 52(b) follows four steps: 1) whether an error occurred, 2) whether the error was plain, 3) whether the plain error affects substantial rights, and 4) whether the plain error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Thomas*, 11 F.3d 620, 630 (6th Cir.1994). "Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." *United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir. 1987).

"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). "To prevail on a claim that the government presented perjured testimony, [a claimant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3)[the] prosecution knew they were false.' " *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir.1995) (quoting *United States v. Farley*, 2 F.3d

645, 655 (6th Cir.1993). The burden is on Benton to show that the testimony was false. *United States v. Griley,* 814 F.2d 967, 971 (6th Cir.1987).

Benton argues that Robinson's testimony was false. As evidence he cites the fact that she was not sent to jail despite being on probation for trafficking cocaine and failing numerous drug tests.[6] He also says that Robinson admitted she was influenced by overhearing officers discuss "what happened" in a room next to where she was during the trial, though she only admitted to hearing it, not to being influenced by it. J.A. at 146–48. Benton also says that Robinson changed part of her story the day of trial after talking to Poindexter at lunch.[7] Robinson testified that she had not talked to Poindexter at all the day of the trial, but later testimony showed they had spoken briefly that day, albeit not about the case. J.A. at 108–09, 134–35. He also notes Robinson's testimony that Poindexter told her that "I needed to come up here and tell the truth or if I made him look like a fool, yeah, he was going to put me in jail." J.A. 150–51. Benton also points to another witness's testimony that Robinson had told her that if she did not testify about Benton then the government would charge her with the drugs, revoke her probation, and take her children. He

also says Robinson's testimony was self-contradictory in a way that shows she was lying, but his description of the testimony is misleading.[8]

Benton argues that the government did not revoke Robinson's probation despite her violations in order to encourage her false testimony. Poindexter, however, said that his department generally does not revoke probation on one failed drug test. Furthermore, even if the jury believed that Robinson received more lenient treatment in exchange for her testimony against Benton, that does not mean that the government was encouraging her to offer false testimony.

The evidence cited by Benton (except for the change of story which was not presented to the jury) was presented at trial as impeachment evidence going to Robinson's credibility. It does not clearly establish that her testimony was false. We have held that "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Scarborough,* 43 F.3d 1021, 1026 (6th Cir.1994) (quotation marks and citation omitted). Benton cannot prove that the government made knowing use of false testimony. The jury had available to it essentially the same evidence we now have, so either it found Robinson

---

**6.** See footnote 3, *supra.*

**7.** Benton says that at the beginning of trial, Robinson was going to say that Benton refused to sell her drugs, but then after talking with Poindexter at lunch, she changed her story and said that she never asked for drugs from Benton. The portion of the record cited actually shows that Robinson changed her story about why Benton did not make a sale to a third person earlier in the day; it says nothing about him selling drugs to her. She was originally going to say that there was an unsuccessful sale because Benton did not trust the buyer, but then she changed her story such that the reason the sale was unsuccessful was because the buyer wanted too

small a quantity. In the end, the government chose not to ask Robinson about the unsuccessful sale at all, so the jury did not hear either story. J.A. at 123–24.

**8.** Benton says that Robinson both said that Benton was going to sell some of the cocaine to her and that "Appellant did not like her using crack cocaine, that he did not use crack cocaine, and that he would not let her use crack cocaine." The transcript, however, reveals that Robinson testified that Benton was trying to get her off cocaine and that he wouldn't let her have it until she had her fits, at which point he started providing her with cocaine every day. J.A. at 139.

credible despite the impeachment evidence, in which case we will not review its assessment of credibility, or it found that the other evidence was sufficient to sustain a guilty verdict without Robinson's testimony, in which case the district court's error in allowing her testimony was harmless because it would not have affected the judgment of the jury. *See United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989).

### C. *Brady* Violation

■ Benton argues that the government failed to disclose a deal it made with Robinson in exchange for her testimony. Benton never alleged at trial that the government had a formal agreement with Robinson (though it was implied in Poindexter's cross examination), he never sought a hearing to determine the existence of any such agreement, and he filed no post-trial motion claiming the existence of such an agreement. Benton failed to preserve this issue for appeal, so the standard of review is plain error. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The due process clause requires the government to disclose favorable evidence to a defendant. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To establish a *Brady* violation, the defendant must show (1) that the prosecutor suppressed evidence, (2) that such evidence was favorable to the defense, and (3) that the suppressed evidence was material. *See Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). A promise not to prosecute a witness falls within the *Brady* rule, as does a promise of immunity. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (promise not to prosecute); *United States v. Boykins,* 915 F.2d 1573 (6th Cir. 1990) (promise of immunity). The govern-

ment must disclose even an informal agreement with a witness. `United States v. Katsakis,* No. 89–80041, 1992 WL 232491, at *5 (6th Cir. Sept.21, 1992) (unpublished).

Benton argues that Robinson must have had a deal with the government based on the same evidence he used to argue she testified falsely. Just as the evidence does not show that Robinson's testimony was false, neither does it show that she had a deal with the government. Benton argues that "[l]ogic and the deduction of any reasonable person would conclude that Shannon Robinson must have been offered a deal," Reply Brief at 14, but speculation is insufficient to maintain a claim of a *Brady* violation based on failure to disclose an agreement with a witness. *See United States v. Mullins,* 22 F.3d 1365, 1373 (6th Cir.1994).

### III. Conclusion

The testimony of the three officer witnesses was sufficient to sustain Benton's conviction even if the jury did not find Robinson credible. Benton's evidence concerning Robinson is insufficient to show that she testified falsely or that she had a deal with the government. It does go to her credibility, but he was able to introduce almost all of the evidence at trial, and we will not reconsider the jury's assessment of Robinson's credibility.

Accordingly, Benton's conviction is AFFIRMED.