NOT RECOMMENDED FOR PUBLICATION
File Name: 12a0346n.06

No. 09-3647

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 30, 2012**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JEVON EDWARDS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

**Before: BATCHELDER, Chief Judge; CLAY and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Jevon Edwards was twice caught selling crack cocaine to a confidential informant. On the first occasion, video and audio recordings captured Edwards handing 63 grams of crack cocaine to the informant in exchange for $2,000. A month later, the informant came again to Edwards to purchase another 63 grams of crack cocaine. Edwards was arrested by police officers witnessing this second transaction, and large amounts of both crack cocaine and powder cocaine were found at the scene.

Following his arrest, Edwards was indicted on two counts of distributing crack cocaine and on one count of possessing powder cocaine with the intent to distribute the drug. A jury found him guilty on all counts, and he was later sentenced by the district court to 120 months in prison. Edwards now appeals his convictions, claiming that the court erred in admitting hearsay evidence, in permitting the government to improperly bolster its key witness, and in failing to grant a judgment

of acquittal at the close of the government's case-in-chief. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The government presented the following evidence at Edwards's trial: In 2008, local, state, and federal officers belonging to the Northern Ohio Law Enforcement Task Force were tipped off by confidential informant Tyrone Marks that Edwards had sold Marks drugs on a monthly basis for the past four years. Marks had been caught in a separate drug investigation and, as a result, was facing federal charges and a potential life sentence. In exchange for the government's recommendation of a more lenient sentence, Marks offered to purchase crack cocaine from Edwards while under task-force surveillance. Such purchases are known as "controlled buys."

Task-force officers decided to conduct two controlled buys from Edwards using Marks as the buyer. On April 30, 2008, Marks called Edwards, knowing that task-force officers were recording the conversation. Detective Alvin Dancy of the Cuyahoga Metropolitan Housing Authority Police Department, a member of the drug task force, was with Marks when he made the call.

Although the recorded conversation was cryptic, Marks asked if he could buy two-and-a-quarter ounces (63 grams) of crack cocaine from Edwards. Marks knew from past experience that he could make a profit "sell[ing] the whole [amount] as is or just break it down as individual rocks," even though he never discussed the price of the crack cocaine with Edwards. On May 1, 2008, Edwards called Marks, and they agreed to set up a meeting in Marks's truck at a pre-arranged location.

After talking to Edwards, Marks met with task-force officers to prepare for the controlled buy. Detective Dancy first thoroughly searched Marks and his truck for contraband, finding none. The officers then gave Marks $2,000 to purchase the 63 grams of crack cocaine from Edwards. They also put video and audio recording devices in the sun visor of Marks's truck. Afterward, Marks drove to the location where he was to meet Edwards. Approximately 10 task-force officers followed in separate unmarked vehicles. Marks was never out of their sight.

Shortly after Marks arrived at the agreed-upon location, Edwards pulled in. Marks was parked in a location where task-force officers could observe the transaction. Edwards approached Marks's truck holding in his left hand a white substance in a clear plastic sandwich bag. Once inside Marks's truck, Edwards verified that he had brought with him 63 grams of crack cocaine, and the two men discussed another potential drug transaction. Edwards then took the $2,000 from Marks and exited the truck, leaving Marks with the 63 grams of crack cocaine.

After Edwards left the scene, Marks was followed by task-force officers to another location where he gave them the 63 grams of crack cocaine that he had just received from Edwards. Detective Dancy once again thoroughly searched Marks and the entire truck to verify that there was no other contraband present.

The next controlled buy did not occur until June 3, 2008. On the day before, Marks called Edwards and again asked for two-and-a-quarter ounces of crack cocaine. They finalized the details of the upcoming transaction after a few more phone calls and false starts.

Before the second controlled buy, task-force officers once more met with Marks. Detective Dancy meticulously searched him and his truck and found no contraband:

> I had [Marks] open his shirt, and I searched all his pockets, searched his chest area, shook his pants, turned the pockets inside out, went down both legs, took the shoes off, searched the shoes and the socks, searched the truck, looked behind the seats, up under the seats, in the glove compartment, up under the dash, over the [visors], looked around the dash area, searched the ash tray, [and] under mats . . . .

On this occasion, however, the officers put only an audio transmitter in Marks's truck and not any video or audio recording devices. Moreover, Marks did not receive any money with which to purchase the drugs because the officers intended to arrest Edwards (and Marks to allay suspicion that he was the informant) before the transaction was completed.

After searching Marks and his vehicle, task-force officers followed Marks to the location where the transaction with Edwards was to occur. They parked in unmarked cars so that at least one of the officers could observe the exchange.

Edwards then arrived at the scene in a car driven by someone else. He walked over to Marks's truck, again with a white substance in a clear plastic sandwich bag in his left hand. Once Edwards sat next to Marks in the truck, Marks put his hand in his pocket as if he were getting the money to pay. At that moment task-force officers rushed in. Edwards saw them coming and pushed something from the bench seat to the floor of the truck. Both he and Marks were arrested at the scene.

Following the arrests, task-force officers searched Marks's truck and found four bags filled with drugs. The first bag, pulled from beneath the driver's side of the bench seat, contained 62.85 grams of powder cocaine, and the second, found behind the first, contained 6.54 grams of crack cocaine. Crack cocaine is made from powder cocaine. Edwards had previously told Marks that he did not make the crack cocaine from the powder until he knew that he had a buyer for it. The

two other bags were found on the bench seat of the truck and together contained approximately 60 to 63 grams of crack cocaine.

Edwards was subsequently indicted on two counts of distributing 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) (2008) (one count for the completed sale on May 1, 2008 and the other count for the interrupted sale on June 3, 2008), and on one count of knowingly possessing cocaine powder with the intent to distribute the drug, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), in connection with his June 3, 2008 rendezvous with Marks. Marks was later sentenced to a term of 90 months' imprisonment instead of life because of his cooperation with the task force.

After the government presented all its evidence at trial, Edwards moved, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, for a judgment of acquittal on all counts. The district court denied the motion, Edwards presented no evidence of his own, and the jury convicted him on all counts. The court subsequently sentenced Edwards to 120 months of imprisonment. This timely appeal followed.

## II. ANALYSIS

### A.    The district court properly overruled Edwards's hearsay objection

Detective Dancy testified that he was with Marks on June 2, 2008 when Marks called Edwards to discuss a potential drug transaction the next day. The government asked Detective Dancy what time he understood that the drug transaction was to take place on June 3:

> Q.  . . . .  So you recall that there was around the noon hour, that there was a conversation between Tyrone Marks and the Defendant?

A. Yes.

Q. Okay. And --

A. And Mr. Marks was advised that --

MR. WATSON: Objection.

THE COURT: What's the basis?

MR. WATSON: Hearsay.

THE COURT: Okay. He said Mr. Marks was advised that -- you were going to talk about what the Defendant said or what? I mean I'm not sure.

MS. BRENNAN: I'll rephrase the question, your Honor.

THE COURT: Okay.

Q. You were present when Tyrone Marks was having that conversation with the Defendant; is that correct?

A. Yes.

Q. Okay. And as a result of that conversation, what was your understanding about when this drug deal would be occurring on June 3rd?

MR. WATSON: Same objection, your Honor.

THE COURT: I -- this is not for the truth of the matter. He was there, and he was told what time the transaction was to come down. He was involved in that as a participant. And so I'll overrule the objection. If you were told when it was going to happen, you can say what you were told.

Q. What was your understanding of whether or not the deal was going to happen on June 3rd, after participating --

A. It was my understanding it would be taking place shortly.

Edwards argues that the district court erred by permitting Detective Dancy to testify, over Edwards's hearsay objection, as to what Marks told Detective Dancy regarding the timing of the June 3, 2008 controlled buy. The government responds by contending that the testimony was not hearsay.

We review a district court's evidentiary rulings under the abuse-of-discretion standard. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010). Here, the district court did not abuse its discretion because we agree that the testimony at issue did not constitute hearsay. "The hearsay rule does not apply to statements offered merely to show that they were made or had some effect on the hearer." *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990) (explaining that "out of court statements offered for the limited purpose of explaining why a government investigation was undertaken" are not hearsay).

Edwards nonetheless argues that the question objected to "was not only to establish the time, but also to improperly suggest that [Marks] had told them that 'Jevon Edwards' was going to make a drug transaction with him." This argument is without merit, however, because the question that Edwards objected to elicited nothing more than the timing of the drug transaction. Detective Dancy had testified earlier in the trial that "[a]fter conferring with [Edwards] on [June] 2nd, Tyrone Marks advised me that [Edwards] was willing to sell drugs to him." He had thus already established that Edwards and Marks planned a drug transaction. Yet Edwards did not object to the earlier testimony at trial and does not now. His hearsay challenge therefore fails.

**B.     The government did not improperly bolster Marks's testimony**

In his second challenge to his convictions, Edwards objects to the statement made by the prosecutor during her rebuttal closing argument (emphasized in bold below), claiming that she "used the prestige of the United State's Attorney's Office to improperly bolster [Marks's testimony]":

> And you're also going to evaluate this; ladies and gentlemen, he received a benefit for cooperating with the Government. That was a little—that was less than time on his own sentence. He's already been sentenced for those crimes, and he's already serving time for those crimes. He did not—he was clear when he talked to you, ladies and gentlemen. He said I'm not receiving any benefit for being here today. **There was no added incentive for him to come in here and testify before you.**

The emphasized argument, however, does not constitute bolstering. "[B]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *United States v. Trujillo*, 376 F.3d 593, 608 (6th Cir. 2004) (internal quotation marks omitted). Marks testified at trial that he had already received a sentence reduction for his cooperation and was not getting any additional reduction or any other benefit in exchange for his testimony. The prosecutor simply summarized that testimony, testimony that was already "known to the jury."

Moreover, Edwards did not object to the argument at the time it was made. We therefore review his objection under the plain-error standard. *See Henderson*, 626 F.3d at 337. Edwards must demonstrate that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *See id.* (internal quotation marks omitted).

Even assuming for the sake of argument that the prosecutor's statement was improper bolstering, the error was so minor that it is nowhere near the level required to constitute plain error. The alleged error was not obvious, it did not affect Edwards's substantial rights, and it did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Edwards's second challenge to his convictions is therefore without merit.

## C.     The government presented sufficient evidence to convict Edwards on all counts

In a final challenge to his convictions, Edwards contends that the evidence presented by the government at trial was insufficient to convict him on any of the three counts charged and that, as a consequence, the district court erred in denying his motion under Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal. The burden imposed on a defendant by Rule 29 is a high one:

> To prevail on this argument, [the defendant] must bear a heavy burden. In reviewing the insufficiency of the evidence challenge, the court examines the evidence in the light most favorable to the government and draws all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.

*Henderson*, 626 F.3d at 340-41(brackets, citation, and internal quotation marks omitted). Edwards has not overcome this substantial burden.

As to the first alleged drug transaction on May 1, 2008, Edwards argues that a reasonable jury could not have concluded that he sold the crack cocaine to Marks because the "buy money" from the first transaction was never recovered, the government did not establish that he and Marks agreed on a price for the crack cocaine, and Marks lied about his hand movements during the video-recorded transaction. The government responds by pointing out that both Marks and his truck were

thoroughly searched before Edwards entered the truck and that no contraband was found. But Marks had with him $2,000 in cash, given to him by task-force officers. On the video, Edwards is seen carrying in his left hand a white substance in a clear plastic sandwich bag as he got into Marks's truck. Marks testified that the substance in Edwards's hand was the same substance that later was proven by laboratory tests to be crack cocaine. After Edwards exited the truck, Marks had gained possession of 63 grams of crack cocaine but no longer possessed the $2,000. The recorded conversation between Marks and Edwards also confirms that the transaction was for 63 grams of top-quality crack cocaine:

Marks: It's cream?

Edwards: Yeah. Yeah.

Marks: 63?

Edwards: Yeah. I'm not gonna short ya.

The alleged deficiencies in evidence that Edwards highlights are thus not enough to offset the overwhelming evidence of Edwards's guilt. For one thing, simply because the $2,000 "buy money" was not found in Edwards's possession when he was arrested a month later does not raise an inference that he never received it. Many things could have happened to the money over that period of time.

Similarly, the failure of Marks and Edwards to verbalize a price does not mean that Marks did not purchase the crack cocaine from Edwards. Marks explained that the cost of 63 grams of crack cocaine was commonly known and, in their previous phone calls over the last four years, the two men had generally tried to avoid discussing any of the details of the transaction in case the call

was being recorded. This particular transaction, after all, was far from the first time that Marks had purchased crack cocaine from Edwards.

Finally, the evidence does not establish that Marks was lying about his hand movements in the truck during the May 1 exchange. In the video, Marks appears to reach down twice, but only the top of his right arm is visible, not his hand. Marks testified that he recalled grabbing the crack cocaine and putting it in his pocket, but did not recall why he reached down the second time. Edwards contends that Marks clearly reached down twice and is therefore lying about the incident. Contrary to Edwards's assertion, however, not being able to recall what happened is not the same as lying about the events. And even if Marks were lying about reaching down, that does not negate the overwhelming evidence demonstrating that Edwards sold the 63 grams of crack cocaine to Marks on the date in question. The evidence that the government presented was therefore more than adequate for a reasonable jury to conclude that Edwards was guilty of the May 1, 2008 charge.

As for the June 3, 2008 transaction, Edwards contends that the drugs found inside Marks's truck after the arrests were not in the possession of Edwards because they were found on or under the driver's seat. But Edwards ignores two key facts: (1) a thorough search of both the truck and Marks was performed before the transaction and no contraband was found, and (2) Marks remained under task-force surveillance from the time of the search until the drug transaction occurred, giving him no opportunity to obtain drugs in the interim. In addition, Marks testified that Edwards brought drugs into the truck and pushed those drugs under the driver's seat when task-force officers rushed in to arrest them.

A reasonable jury could thus conclude that Edwards brought the drugs into the truck and that they were in his actual possession. *See United States v. Benton*, 64 F. App'x 914, 918-19 (6th Cir. 2003) (holding that the government's evidence was sufficient to prove Benton's actual possession of cocaine where witnesses saw him selling cocaine earlier in the day and later that day stuffing something in his friend's couch that turned out to be cocaine).

Edwards also challenges his conviction for possessing with the intent to distribute the powder cocaine that was found in Marks's truck on June 3, 3008. "The crime of possession of cocaine with intent to distribute is a specific intent crime such that the defendant's intent is a statutory element of the offense." *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011). "To show possession of a controlled substance with intent to distribute, the government must prove that: (1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute." *United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010). Edwards claims that the government never presented any proof as to his intent to sell the powder cocaine.

True enough, no direct evidence of his intent was offered at trial, but Edwards's intent was sufficiently demonstrated through circumstantial evidence. The government showed that Edwards had brought 62.85 grams of powder cocaine into Marks's truck. Marks testified that Edwards possessed powder cocaine so that he could "cook" it up and make crack cocaine to sell. In addition, Marks testified that 63 grams of crack cocaine was worth $2,000 and was a large enough quantity to be sold for a profit. A reasonable jury could conclude, based on these facts, that the 62.85 grams of powder cocaine that Edwards possessed was intended for eventual sale. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995) ("Intent to distribute can be inferred from the

possession of a large quantity of drugs, too large for personal use alone."); *United States v. Young*, 243 F. App'x 105, 107 (6th Cir. 2007) ("Possession of large quantities of controlled substances, i.e., crack cocaine and cocaine powder, is, standing alone, sufficient evidence of the defendant's specific intent to distribute, as is possession of controlled substances having a substantial street value."). The evidence was thus sufficient to support Edwards's conviction on this count.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.