NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 11a0499n.06

**No.** 09-5888

FILED

*Jul 20, 2011*

LEONARD GREEN, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MORRIS CLEMONS, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; and COLLIER, Chief District Judge.[*]

**CURTIS L. COLLIER, Chief District Judge**. Appellant Morris Clemons was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The district court, after determining Clemons was an armed career criminal, sentenced him to a within-Guidelines sentence of 188 months of incarceration. Clemons appeals, arguing the government failed to present sufficient evidence to convict him. We disagree, and **AFFIRM** the district court's judgment.

## I. Relevant Facts

Because Clemons challenges the sufficiency of the evidence, we will recount in some detail the evidence before the jury. Only two witnesses were called in the government's case-in-chief.

_____

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

First was Detective Star Handley of the Memphis Police Department ("MPD"). Detective Handley testified that on December 11, 2007 at around 7:45 p.m., he and about 10 other officers with the MPD Organized Crime Unit responded to a drug complaint at 1160 Azalea in South Memphis. When the unit arrived at the scene, Handley pulled his SUV up to the apartment complex and observed a group of males in the parking lot drinking tall cans of beer, listening to loud music, and creating a disturbance. As Handley and the other officers exited their vehicles, the group of males began to disperse. Handley focused his attention on the male standing closest to him – who was in fact Clemons. Handley observed Clemons start walking down the passenger side of a maroon Ford Contour, towards the front of the vehicle. Clemons was the only person standing on the passenger side of the vehicle. The Contour was only four to five feet away from Handley. Handley saw Clemons toss an object, "[a]nd as I saw him toss this object, I heard the sound of like metal hitting the ground. . . . It would be the sound of like a metal – a hard metal object hitting the ground. It wouldn't be the sound of like a soda can hitting the ground or some change. It was like a hard metal like thud." Handley, thinking the tossed object was a firearm, immediately drew his weapon. The other officers followed suit.

Handley immediately detained Clemons. When Handley detained Clemons, Clemons had traveled at most two to three feet from where he stood when he tossed the metal object. Handley looked in the area where he had heard the tossed metal object hitting the ground. There, on the concrete under the engine of the maroon Contour, Handley recovered a loaded, chambered Lorcin .32-caliber handgun. Handley did not observe any other objects in the area where he recovered the firearm.

2

Handley testified regarding additional items the officers recovered from the parking lot that night. One other firearm was later recovered from under the maroon Contour – a .38-caliber revolver. This weapon was lying beneath the driver's side front of the vehicle, behind the front tire. Additionally, one of the males received a citation for marijuana found in his pocket, and officers recovered over a gram of powder cocaine and a couple of bags of marijuana, which they could not attribute to any particular individual.

The government's second witness was MPD Detective Jonas Holguin. Holguin processed the Lorcin firearm recovered by Handley, checking it for fingerprints. Holguin did not recover any fingerprints or ridge detail from the weapon. Holguin's testimony concluded the government's case-in-chief.

After the government rested, Clemons moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29, arguing the government had failed to prove beyond a reasonable doubt that Clemons possessed the Lorcin firearm. The court denied the motion, citing Handley's testimony that he recovered the Lorcin firearm from the spot where he observed Clemons throw an object that made a gun-like metallic sound when it struck the ground. The court further noted that no one else was in Clemons's vicinity, and no other objects were found under the maroon Contour save the .38-caliber weapon, which was on the opposite side of the vehicle from Clemons.

The first defense witness was Anthony Marshall. Marshall was one of the males congregating in the parking lot, and he was cited for marijuana found in his possession that night. Marshall testified that he was standing next to Clemons when the police pulled up, and he saw Clemons drop a beer can. Marshall stated Clemons did not throw a gun. According to Marshall,

3

after the police found two guns under the maroon Contour, they assigned ownership of the weapons arbitrarily:

> And then [the police] said, we found a gun over – we found a gun over here, two guns. Anybody want to take the gun charge? And didn't nobody say nothing. So they said, well, we're going to start giving them out. They said, well, this is your gun and this one is your gun. They just pointed and said, this is your gun and this is your gun charge. And that's how they wrote it up.

Marshall testified that he had not previously reported this fabrication by the police.

Next, the defense called Derek Hallom. Hallom was also among the men hanging out in the parking lot, and was the individual charged with possession of the .38 caliber revolver found by the driver's front tire of the maroon Contour. Hallom subsequently pleaded guilty to this offense in state court. Hallom testified that, immediately after the police exited their vehicles, all of the congregating males got on the ground. Hallom testified he had been drinking beer and smoking marijuana and was a "little intoxicated" when the police arrived. Hallom saw men throwing marijuana, beer, cigarettes, and cell phones to the ground, but he did not see any guns thrown. Hallom heard two officers yell out that they had found guns. The officers then demanded to know who the guns belonged to, but "everyone hollered I ain't got no gun." The officers threatened that someone was going to have to take the charge. Hallom then "stood up and I said, sir, I'll take one. I told the officer, I said, well, one of them is mine, sir. I'll take one of them." According to Hallom, after no one accepted responsibility for the other firearm, officers said to Clemons "well, I guess this one is yours. . . . Somebody's [sic] is going to have to take it."

Hallom subsequently signed a confession, wherein he described the number of rounds that were in the weapon, where he obtained the weapon, and certified that his confession was freely and voluntarily given. Despite his confession and guilty plea, however, Hallom testified that the gun

4

really did not belong to him, and he had claimed ownership simply "to take one for the team." On cross-examination, the government played a recording of a phone call Hallom made from jail to one of his family members wherein he admitted to the family member that he had possessed the pistol, and had thrown it beneath the car.

After Hallom's testimony, the defense rested. The defense did not renew its Rule 29 motion for judgment of acquittal. The government then called two rebuttal witnesses.

The government's first rebuttal witness was MPD Detective Trent Pinks. Pinks was the officer who cited Marshall for marijuana possession. Pinks testified that he heard a "distinctive piece of metal being clanked like a slide" immediately after Handley exited his vehicle. Pinks "knew the sound to probably be a gun." Pinks testified that the sound came from the area where Handley and Clemons were standing. Pinks stated the interval between the metallic noise and Handley's ordering everyone to "get down" was "almost instantaneous."

The government's final rebuttal witness was MPD Detective Kittrel Robinson. Robinson testified that when he and the other officers pulled up on the scene, his role was to stay in his vehicle and watch in case someone ran from the scene. Robinson saw Handley exit his vehicle, and then saw the group of males begin to "scatter." Robinson testified that he focused his attention on Hallom, who appeared to have a weapon in his hand:

> I had my eyes on a gentleman known to me now by the name of Derek Hallom, at which time when he saw Detective Handley and them exit with their police gear on, he began to walk away toward my vehicle. I was in an unmarked vehicle and he didn't know who I was, and had what appeared to be a weapon in his hand. And he came toward the front of a [Ford] Contour that was parked in the parking lot there, and he placed the weapon behind a tire like the regular one that's over behind the front driver's side tire.

Robinson testified that, as soon as he saw Hallom place the weapon by the driver's-side tire of the maroon Contour, he exited his vehicle with weapon drawn and ordered everyone on the ground, which Handley was simultaneously ordering. Robinson then went directly to the spot where Hallom had been and retrieved the .38-caliber revolver from the spot where he saw Hallom lay it down.

## II. Standard of Review

We review insufficiency-of-the-evidence claims to determine whether, "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Price*, 134 F.3d 340, 349 (6th Cir. 1998) (quoting *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992)).

However, where a defendant moves for judgment of acquittal at the close of the government's case-in-chief, and then presents defense evidence but neglects to renew the motion at the close of all evidence, "he waives objection to the denial of his earlier motion, absent a showing of a manifest miscarriage of justice." *Id*. at 350 (citing *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994), *cert. denied*, 513 U.S. 948 (1994)). "Phrased another way, where, as here, a defendant does not renew his motion for judgment of acquittal for insufficiency of the evidence at the close of all of the proofs, appellate review is limited to determining whether there was a manifest miscarriage of justice." *Id*. (quotation marks omitted). "A 'miscarriage of justice' exists only if the record is devoid of evidence pointing to guilt." *Id*. (quotation marks omitted); *see also United States v. Rodriguez*, 409 F. App'x 866, 871 (6th Cir. 2011) (reviewing a sufficiency of the evidence claim only for manifest miscarriage of justice because the defendant failed to renew his motion for judgment of acquittal); *United States v. Roberge*, 565 F.3d 1005, 1008 (6th Cir. 2009) (same).

6

## III. DISCUSSION

Clemons concedes he did not renew his motion for judgment of acquittal at the close of all evidence. Accordingly, we review only for manifest miscarriage of justice. Under this standard, Clemons's conviction should be reversed only if the record is "devoid of evidence pointing to guilt." *Price*, 134 F.3d at 350. The evidence of Clemons's guilt was more than sufficient to meet that standard.

Handley testified he saw Clemons throw something under the maroon Contour, and heard the object make a metallic sound when it hit the pavement. Handley was only a few feet away from Clemons at the time. Handley testified that the sound was not like one that would be caused by a beverage can, but one that, based on his experience, he believed to be consistent with a handgun. Pinks likewise testified that the metallic sound was distinctive of a gun. Handley testified that he immediately went to the area, only a few feet away, where he had heard the metal object strike the ground. He recovered a Lorcin firearm on the ground underneath the maroon Contour. No beer cans or other innocent items were found under the Contour – only the .38-caliber revolver that Robinson testified he saw Hallom place behind the driver's-side tire.

The testimony of Handley and others clearly constitutes *some* evidence probative of Clemons's possession of the Lorcin handgun. Hence, the record is not "devoid of evidence pointing to guilt." Accordingly, Clemons's conviction is not a "manifest miscarriage of justice," and so must be affirmed.[1]

---

[1] Insofar as Clemons invites this Court to abandon the long-standing "manifest miscarriage" standard applicable when a defendant neglects to renew a Rule 29 motion, the panel is without authority to do so. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). In any case, this standard is applied by many sister Circuits, and Clemons offers no compelling argument for abandoning it.

## IV.  CONCLUSION

For these reasons, we **AFFIRM** the decision of the district court.