NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0436n.06

No. 17-1860

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Aug 23, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| ANTONIO RAMON MARTINEZ-LOPEZ | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| Defendant-Appellant. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Antonio Martinez-Lopez appeals his convictions for crimes related to a conspiracy involving staged car accidents and fraudulent insurance billings. He argues that certain testimony at his trial should have been excluded as hearsay, that insufficient evidence existed to convict him of naturalization fraud, and that the intended loss calculation for his sentence was too high. We affirm his convictions and sentence.

I.

This case involves a conspiracy by several individuals to open and operate physical therapy clinics that fraudulently billed insurance companies—Revive Therapy Center, LLC ("Revive Therapy"), Renue Therapy Center, LLC ("Renue Therapy"), and H&H Rehab Center, LLC ("H&H Rehab"). In this fraud scheme, the clinics would bill insurance companies for treatments not provided, often to patients whose accidents and injuries had been staged in return for payment by the clinic's owners and operators.

The first clinic, Revive Therapy, was opened by Belkis Soca-Fernandez, David Sosa-Baladron, and Martinez-Lopez in Wyoming, Michigan, in April 2012. Martinez-Lopez served as Revive Therapy's manager. Around the time of Revive Therapy's opening, Martinez-Lopez, Soca-Fernandez, and Sosa-Baladron met with Doctor Flor Borrero, a local pediatrician, to convince her to see patients from Revive Therapy, representing that Revive Therapy was serving the low-income Hispanic community in Wyoming. Borrero agreed to see patients from the clinic outside of her normal business hours, and thereafter Martinez-Lopez began bringing patients to see her.

Many of the patients that Martinez-Lopez brought to see Borrero, however, had not suffered real injuries but had instead been involved in staged car accidents. These "patients" would be recruited by individuals involved in Revive Therapy to stage car accidents, and afterward, Martinez-Lopez would accompany them to Borrero's office and coach them on what symptoms to report. After obtaining a prescription from Borrero for physical therapy, the participants would sign blank therapy treatment forms or forms overstating the treatment they received at Revive Therapy—they generally received very little treatment or no treatment at all. Revive Therapy would then bill insurance companies for these treatments, and the "patients" would typically be paid between one and two thousand dollars for their participation in the fraud.

One staged-accident participant who reported false treatments at Revive Therapy was Martinez-Lopez's childhood friend Gustavo Acuna-Rosa. Acuna lived with Martinez-Lopez for a period of time, and Martinez-Lopez often referred to Acuna as his "cousin." At Revive Therapy, Acuna, Martinez-Lopez, and Soca-Fernandez discussed opening another clinic named Renue Therapy Center in Lansing, Michigan. In May 2013, Acuna filed corporate documents for Renue Therapy and began operating and managing that clinic in Lansing.

Renue Therapy used the same fraud scheme as Revive Therapy—staging car accidents and billing insurers for treatment that was never provided. Renue Therapy was also able to establish the same relationship with Borrero as Revive Therapy. Martinez-Lopez arranged for this, introducing Acuna to Borrero's son, who was her office manager, and vouching for Acuna as his cousin. Renue Therapy patients were then able to be seen and prescribed treatment by Borrero.

One such Renue Therapy patient, Maria Sanchez, was a confidential informant for the Department of Homeland Security. Sanchez was approached by a Renue Therapy recruiter who asked whether she wanted to make easy money by faking a car accident. With help of a government agent, Sanchez produced an accident report to make it appear that she had staged a crash. After this, Acuna and Martinez-Lopez, took her to see Borrero. Sanchez later met up with Acuna and another individual in a parking lot to sign blank therapy forms for Renue Therapy. Acuna, however, forgot the forms and had to call Martinez-Lopez to bring them over. After Martinez-Lopez arrived with the blank treatment forms, Sanchez signed them, and the forms were later submitted to an insurance company for payment, even though Sanchez never received treatment at Renue Therapy.

Sanchez later signed blank treatment forms for H&H Rehab after being told that Acuna had shut down Renue Therapy. Yoisler Herrera-Enriquez, who had worked as a massage therapist at Revive Therapy, formed H&H Rehab in Wyoming, Michigan, in August 2013. H&H Rehab followed the same fraud scheme as Revive Therapy and Renue Therapy, and it submitted Sanchez's fraudulent therapy treatment bills. Herrera-Enriquez testified at trial that Martinez-Lopez helped him set up H&H Rehab and that Martinez-Lopez worked as a patient recruiter for the clinic, sharing in the profits from patients he recruited.

Martinez-Lopez, along with several others, was indicted in March 2016, and he was arrested in Florida shortly thereafter. He was tried jointly with Soca-Fernandez and Sosa-Baladron, and the jury found him guilty on all counts—one count of conspiracy to commit mail fraud, nine counts of health care fraud, seven counts of mail fraud, and one count of unlawful procurement of naturalization. He was sentenced to 87 months' imprisonment.

II.

A.

On appeal, Martinez-Lopez first argues that the district court incorrectly allowed several statements made by Acuna to be admitted, when they should have been excluded as hearsay. During trial, Herrera-Enriquez testified that he heard Acuna discussing Renue Therapy with Martinez-Lopez and Soca-Fernandez at Revive Therapy.[1] Martinez-Lopez challenges the admission of the following exchange:

Q. Who would you hear talking about Renue Therapy at Revive Therapy?

MR. UPSHAW: Objection. Again, assumes facts not in evidence. He never said he heard anyone.

MR. STELLA: I have to—

THE COURT: Overruled. Go ahead.

THE WITNESS: Okay. Gustavo [Acuna] is kind of like a friend or cousin of Antonio. I guess they knew each other for a long time, and they decide to open another clinic, which the name is Renue Therapy Center, something like that in Lansing.

BY MR. STELLA:

Q. Would Mr. Acuna talk about the clinic with Mr. Martinez while he was at Revive Therapy?

A. Yes.

. . .

BY MR. STELLA:

---

[1] Acuna did not testify. Prior to trial, Acuna pled guilty to charges related to the fraud, and his plea agreement specified that he would testify at Martinez-Lopez's trial; however, when he was called, he refused to testify, and the court held him in criminal contempt.

Q. When you were at Revive Therapy, would you hear discussions between Defendant Soca and Mr. Acuna about Renue Therapy?

MS. COBB: Objection, hearsay.

MR. STELLA: Your Honor, it's co-conspirator's statement and it's an admission by a party opponent.

THE COURT: Objection is overruled. Go ahead.

THE WITNESS: What do you mean with discussion? What do you mean discussion?

BY MR. STELLA:

Q. Were they talking about Renue Therapy?

A. Yes.

Q. They were?

A. Okay.

Q. Tell us what they were talking about?

A. That they were going to open another clinic, the name is Renue Therapy Center.

DE 365, Trial Tr. Vol. II, Page ID 2380–82. The district court concluded that these statements fell within the co-conspirator exception to hearsay under Rule 801(d)(2)(E) and allowed their admission over Martinez-Lopez's objection. We hold that these statements were properly admitted because they were not offered for the truth of the matter asserted and therefore were not hearsay.

Hearsay, an out-of-court statement offered "to prove the truth of the matter asserted," is not admissible at trial unless a rule or statute provides otherwise. Fed. R. Evid. 801, 802. Though we generally review a district court's evidentiary determinations for abuse of discretion, "whether a statement is hearsay is a legal question" that we review *de novo*. *United States v. Porter*, 886 F.3d 562, 566 (6th Cir. 2018). When "[t]he significance [of a statement] lies entirely in the fact that the words were spoken . . . the statement does not fall within the Rule 801(c) definition of hearsay." *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986); *see also* Fed. R. Evid. 801(c) advisory committee's note to the 1972 proposed rules. This is because in such cases "there is no need to assess the credibility of the declarant." *Hathaway*, 798 F.2d at 905.

Here, all that matters for the prosecution's purpose is that the conversation between Acuna and Martinez-Lopez occurred, and therefore these statements were not hearsay. The mere fact that the conversation took place provides circumstantial evidence of Martinez-Lopez's participation in and knowledge of the Renue Therapy scheme. Indeed, the very reason Martinez-Lopez contends that these statements were prejudicial to him is because they "placed him in conversations regarding the formation of Renue Therapy" and "went to the very heart of the disputed issue of whether Defendant-Appellant participated in the fraud at Renue." CA6 R. 15, Appellant Br., at 25. It is true that these statements tend to show—and by introducing them the prosecution sought to prove—that Martinez-Lopez was aware of and participated in the conspiracy to open Renue Therapy. But Martinez-Lopez's involvement does not depend on the truth of Acuna's statements—just on his participation in the conversation. That it is difficult to identify an actual statement that's truth could be at issue further indicates that the significance of the offered testimony was to show simply that the conversation *happened*—not the content of any statements made. Herrera-Enriquez's testimony therefore did not offer hearsay and was properly admitted.

B.

Martinez-Lopez next contends that the evidence is insufficient to sustain his conviction of naturalization fraud in violation of 18 U.S.C. § 1425(a) because there was no evidence he committed a crime prior to completing the naturalization forms. But Martinez-Lopez waived any objection for sufficiency of the evidence in the district court, and on appeal he supports this argument by erroneously narrowing the charge in the indictment. He is therefore not entitled to relief on this ground.

1.

Generally, the standard of review for sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt; however, when a defendant fails to make or renew a Rule 29 motion for judgment of acquittal, he waives any objection to the sufficiency of the evidence. *See United States v. Jordan*, 544 F.3d 656, 670 (6th Cir. 2008). When there is such a waiver, we review the sufficiency of the evidence only for a manifest miscarriage of justice. *Id.*

Martinez-Lopez did not make a Rule 29 motion for judgment of acquittal in the district court, and he therefore waived any objection to the sufficiency of the evidence. Indeed, not only did Martinez-Lopez's counsel fail to make a Rule 29 motion—he affirmatively chose *not* to make one:

> THE COURT: . . . At side bar, we decided the Rule 29s would be reserved until now, and as if made at the close of the government's proofs. Mr. Upshaw, do you have a motion in that regard, sir?
>
> MR. UPSHAW: I do not have a Rule 29, your Honor.

DE 369, Trial Tr. Vol. VI, Page ID 3422. Immediately following this exchange, counsel for codefendants Soca-Fernandez and Sosa-Baladron both made their own Rule 29 motions.

Given Martinez-Lopez's counsel's affirmative decision not to make a Rule 29 motion, it is arguable that we should not entertain his sufficiency argument *at all*—even under the manifest-miscarriage-of-justice standard. In addition to holding that "[f]ailure to make the required [Rule 29] motions constitutes a waiver of objections to the sufficiency of the evidence," *Jordan*, 544 F.3d at 670, we have held that "[a]lthough specificity is not required in a Rule 29 motion, 'when a defendant makes a motion on specific grounds . . . all grounds not specified in the motion are waived,'" *United States v. Osborne*, 886 F.3d 604, 618 (6th Cir. 2018) (alteration in original) (quoting *United States v. Wesley*, 417 F.3d 612, 617 (6th Cir. 2005)); *see United States v. Dandy*,

998 F.2d 1344, 1357 (6th Cir. 1993). When the "waiver" is of the former kind—the unwitting failure to make or renew a Rule 29 motion—we review the sufficiency of the evidence for manifest miscarriage of justice. *See, e.g.*, *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013); *United States v. Street*, 614 F.3d 228, 236 (6th Cir. 2010); *Jordan*, 544 F.3d at 670. But when the waiver is of the latter type—raising only some grounds in a Rule 29 motion for acquittal but omitting others—this court generally does not review the omitted grounds *at all*; *i.e.*, we deem them completely waived. *See Osborne*, 886 F.3d at 618 (declining to review waived claims at all where a defendant "made a motion for judgment of acquittal on specified grounds, and those grounds did not include the claim that is on appeal"); *United States v. Montgomery*, 379 F. App'x 527, 530 (6th Cir. 2010) (same); *see also United States v. Winkle*, 477 F.3d 407, 415 (6th Cir. 2007); *Wesley*, 417 F.3d at 617. This is because when a Rule 29 motion is based on specific grounds, there "is an indication that counsel has evaluated the record and has these particular reasons for his motion." *Osborne*, 886 F.3d at 618 (quoting *Dandy*, 998 F.2d at 1357). Thus, although both types of Rule 29 omissions are termed "waiver," they are generally treated differently by a reviewing court.[2]

Here, Martinez-Lopez's counsel's affirmative decision not to make a Rule 29 motion is more akin to an attorney's decision to omit certain grounds from a Rule 29 motion—his counsel's exchange with the court indicates that he "evaluated the record" and chose not to make a motion of acquittal to the district court on *any* grounds. *See Osborne*, 886 F.3d at 618. Therefore, it is likely that we could decline to review Martinez-Lopez's sufficiency of the evidence claim entirely.

---

[2] It is likely that this differing treatment is because inadvertent failure to make or renew a Rule 29 motion is really a forfeiture—"the failure to make the timely assertion of a right," *United States v. Olano*, 507 U.S. 725, 733 (1993)—while raising certain grounds in a Rule 29 motion and omitting others is more akin to a true "waiver"—"the intentional relinquishment or abandonment of a known right," *id.* (internal quotation marks and citation omitted); *see United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014).

But because there is some ambiguity in this circuit's precedent regarding when review for a manifest miscarriage of justice is appropriate, we nevertheless analyze his claim under this standard. *See United States v. LaVictor*, 848 F.3d 428, 457–58 (6th Cir. 2017), *cert. denied*, 137 S. Ct. 2231 (2017) (applying the manifest-miscarriage-of-justice standard to grounds that had been "waived" by their non-inclusion in an otherwise properly made Rule 29 motion); *see also United States v. Guadarrama*, 591 F. App'x 347, 351–52 (6th Cir. 2014) (same). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Jordan*, 544 F.3d at 670 (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)).

2.

Martinez-Lopez is not entitled to relief based on the sufficiency of evidence for his naturalization fraud conviction, as the record is not "devoid of evidence pointing to guilt." *Price*, 134 F.3d at 350 (internal quotation marks and citation omitted). More than sufficient evidence exists to uphold his conviction.

Martinez-Lopez was found guilty of Count 22 in the indictment, which charged him with "knowingly making a false statement in connection with his [February 2013] application for naturalization" by answering "No" to a question on his N-400 Application for Naturalization asking whether "he previously committed a crime or offense for which he had not been arrested." DE 229, Fourth Superseding Indictment, Page ID 854. The indictment charged that Martinez-Lopez had

> committed the crimes of health care fraud and mail fraud when he submitted, or caused to be submitted, false and fraudulent HCFA Health Insurance Claim Forms for treatment related to a staged automobile accident of Gustavo Ramiro Acuna-Rosa, which accident occurred on October 13, 2012, as well as for staged automobile accidents for other alleged patients of Revive Therapy Center, L.L.C.

*Id.*

9

Martinez-Lopez contends that the evidence was insufficient to convict him of naturalization fraud because the government did not show that he was involved in the October 13, 2012, staged car accident. His arguments on appeal relate solely to his knowledge of and involvement in the October 2012 crash. But, as the government notes, the indictment also alleged that Martinez-Lopez lied based on his involvement in "staged automobile accidents for other alleged patients of Revive Therapy Center, L.L.C." *Id.* And the jury heard evidence of Martinez-Lopez's involvement in several staged accidents prior to his February 2013 naturalization application.

For example, Dolis Rojas-Lopez testified that in July 2012, she participated in a staged car accident and that afterward Martinez-Lopez coached her on what symptoms to report to Borrero, had her sign blank therapy forms for Revive Therapy, and paid her $2,000. Mirna Lopez-Publes similarly testified that in August 2012, Rojas-Lopez recruited her to stage a crash and that afterward Martinez-Lopez met Lopez-Publes at Borrero's office and coached her on what injuries to report. Martinez-Lopez then paid her for staging the accident and had her fill out paperwork for treatment at Revive Therapy, where she only received treatment a few times, despite the many more billings submitted by Revive Therapy as insurance claims.

Moreover, the record is not devoid of evidence that Martinez-Lopez was involved in the October 2012 crash. The October 2012 crash involved Juan Espinosa-Ramon, who lived in Nebraska, traveling to Grand Rapids, Michigan, to stage a car accident with Acuna. Espinosa-Ramon testified that when he arrived in Grand Rapids, he met with Acuna and Martinez-Lopez at the apartment they shared and that he spent the night there. The next day, Espinosa-Ramon crashed into the back of Acuna's car, as he and Acuna had previously discussed. Espinosa-Ramon again spent the night at the apartment of Acuna and Martinez Lopez, and the following morning he

retrieved an envelope from the countertop containing $2,000 in cash. Acuna then sought treatment at Revive Therapy, and Revive Therapy submitted bills to insurance companies for treatment Acuna did not receive.

Martinez-Lopez points out that Espinosa-Ramon never testified that he discussed the plan with Martinez-Lopez and that Espinosa-Ramon testified that did not see Martinez-Lopez at the apartment after the crash. But this does not mean that the record is devoid of evidence that could support Martinez-Lopez's involvement. Espinosa-Ramon met Martinez-Lopez and Acuna at their apartment when he first arrived in Grand Rapids, spent the night there before and after the staged crash, and collected an envelope full of cash from the apartment's countertop as payment for his involvement. These facts could support Martinez-Lopez's knowledge of and involvement in the October 2012 crash. Moreover, Martinez-Lopez was the manager of Revive Therapy, and the jury heard testimony that he was responsible for handling Revive Therapy's bank accounts and that he had previously paid other participants in staged car accidents. This evidence more than meets the manifest-miscarriage-of-justice standard. *See United States v. Clemons*, 427 F. App'x 457, 461 (6th Cir. 2011) (no manifest miscarriage of justice when there was "*some* evidence probative" of guilt).

Given that the record is not devoid of evidence of Martinez-Lopez's involvement in fraud "for treatment related to a staged automobile accident . . . on October 13, 2012," and there is substantial evidence of his fraud related to "staged automobile accidents for other alleged patients of Revive Therapy" prior to his February 2013 naturalization application, there is sufficient evidence to sustain his conviction for naturalization fraud. DE 229, Fourth Superseding Indictment, Page ID 854; *see Price*, 134 F.3d at 350.

C.

Martinez-Lopez last argues the district court improperly attributed losses associated with Renue Therapy to him in calculating his sentence, resulting in a 16-level enhancement to his base offense level. We review a district court's factual findings in sentencing a defendant for clear error and its application of a Sentencing Guidelines provision *de novo*. *E.g.*, *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). Here, the district court did not err in attributing the losses related to Renue Therapy to Martinez-Lopez for purposes of his loss calculation. *See* USSG § 1B1.3(a)(1)(B) cmt.3.

The PSR grouped all of Martinez-Lopez's counts besides unlawful procurement of naturalization for Guidelines calculation purposes. USSG § 3D1.2(d). The applicable guideline for these offenses is USSG § 2B1.1. *See* USSG § 3D1.3(b). Under § 2B1.1(b)(1)(I), Martinez-Lopez Received a 16-level increase to his base offense level because the intended loss attributed to him was $1,637,076.50, which falls within the range of over $1,500,000 but less than $3,500,000. This intended loss calculation included $386,233.25 of fraudulent billing from Renue Therapy. Martinez-Lopez alleges that he should not have been held responsible for the intended losses associated with Renue Therapy because he did not participate in the fraud associated with that clinic. He therefore contends that he should have received only a 14-level enhancement, as without the losses from Renue Therapy, the intended loss amount would be more than $550,000 but less than $1,500,000. USSG § 2B1.1(b)(1)(H).

The Guidelines provide that the base offense level calculation includes "in the case of a jointly undertaken criminal activity . . . , all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." USSG § 1B1.3(a)(1)(B).

12

We have held that § 1B1.3(a)(1)(B) "requires that the district court make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002); *see also United States v. Valentine*, 692 F. App'x 235, 239 (6th Cir. 2017). Thus, "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Orlando*, 281 F.3d 586, 600 (6th Cir. 2002) (quoting *United States v. Swiney*, 203 F.3d 397, 402 (6th Cir. 2000)). However, "[i]n order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." *Campbell*, 279 F.3d at 400 (internal quotation marks and citation omitted).

Here, the district court addressed the scope of Martinez-Lopez's involvement in the conspiracy, concluding that he had "very significant involvement in this conspiracy," and, though he may have been less involved than Soca-Fernandez and Sosa-Baladron, Martinez-Lopez was "very much involved" in the conspiracy's "various components." DE 371, Sent. Tr., Page ID 3624. The district court also specifically addressed Martinez-Lopez's involvement in Renue Therapy, concluding that it was "jointly undertaken activity" that was "foreseeable to the defendant in light of the links, especially the introduction of the doctor, [and] the supplying of blank treatment forms," as well as other factual development in the presentence report. *Id.* at 3610.

Martinez-Lopez "admits that he was aware of the operation of Renue Therapy" but contends that he should not be held responsible for these losses because he never worked there and never "recruited or hired employees" or "referred clients to the clinic." CA6 R. 15, Appellant Br., at 21. But those facts do not take the Renue Therapy fraud outside of the scope of his jointly

13

undertaken criminal activity. As the district court observed, there was evidence at trial that Martinez-Lopez was involved in discussions about the opening of Renue Therapy and that he aided in its operations once it was open. Martinez-Lopez introduced Acuna to Borrero's son and office manager, vouching for Acuna as his cousin, which allowed Renue Therapy to establish a relationship with Borrero and receive treatment referrals from the physician. Moreover, Martinez-Lopez accompanied Acuna when he took Sanchez, the government informant, to Borrero's office for an examination after she reported to have staged a car accident. Later, when Sanchez was supposed to sign blank treatment forms for Renue Therapy and Acuna forgot to bring them, it was Martinez-Lopez that Acuna called to bring the blank treatment forms, which were later submitted as false claims. From this, the district court could fairly infer that Martinez-Lopez agreed to participate in the Renue Therapy fraud. *See Campbell*, 279 F.3d at 400. The district court therefore did not clearly err in attributing the losses from Renue Therapy to Martinez-Lopez.

## CONCLUSION

For the reasons stated, we affirm the district court and uphold Martinez-Lopez's convictions and sentence.

14